ACCEPTED
12-15-00169-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/16/2015 3:57:56 PM
Pam Estes
CLERK

## C.A. NO. 12-15-00170-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
11/16/2015 3:57:56 PM
PAM ESTES
Clerk

**IN THE
COURT OF APPEALS FOR THE STATE OF TEXAS
TWELFTH SUPREME JUDICIAL DISTRICT
TYLER, TEXAS**

**LINDA ANN PARRISH RICHARDSON and GARY BRUCE
RICHARDSON, CO-TRUSTEES OF THE M. C. PARRISH, JR.
TESTAMENTARY TRUST** *et al*,

**APPELLANTS**

**VS.**

**DONALD ROGER MILLS** *et al*,

**APPELLEES**

**ON APPEAL FROM THE 145ᵀᴴ JUDICIAL DISTRICT COURT
OF NACOGDOCHES COUNTY, TEXAS**

## BRIEF FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

**RICHARD L. MERRILL**
**FABIO & MERRILL**
**Twelve Greenway Plaza, Suite 101**
**Houston, Texas 77046-1208**
**(713) 961-0408**
**(713) 961-2934 (Fax)**
**Texas Bar No. 13963500**
**ATTORNEY FOR APPELLANTS-
PARRISH TRUST PARTIES**

**BERRY DUNBAR BOWEN**
**BOWEN FIRM**
**3014 Brazos Street**
**Houston, Texas 77006**
**(713) 521-3525**
**(713) 521-3575 (Fax)**
**Texas Bar No. 02721050**
**ATTORNEY FOR APPELLANTS-
LUMMIS PARTIES**

## IDENTITY OF PARTIES AND COUNSEL

The names and addresses of all parties to the trial court's judgment or order appealed from and their respective counsel are as follows:

**APPELLANTS - PARRISH TRUST PARTIES**

LINDA ANN PARRISH RICHARDSON AND GARY BRUCE RICHARDSON, CO-TRUSTEES OF THE M. C. PARRISH, JR. TESTAMENTARY TRUST
P. O. Box 525
Willis, TX 77378

MARGARET WILSON RECKLING, INDIVIDUALLY AND AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS CO-TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON
426 N. 2nd St.
Aspen, CO 81611

JAMES COOKE WILSON, INDIVIDUALLY AND AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS CO-TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON
P.O. Box 460024
Houston, TX 77056

JUDY CLEVELAND HUPPERT
P.O. Box 150191
Austin, TX 78715

JANIE GRANGER SPICER
4126 Woodcreek Drive
Dallas, TX 75220

JOHN K. HARDY
716 Wood Rd.
New Braunfels, TX 78130

ANNE E. DAVISON, INDIVIDUALLY AND AS EXECUTOR OF
THE ESTATE OF THOMAS S. DAVISON, DECEASED
1250 Springlake Drive
Dripping Springs, TX 78620

MARY GAIL THOMAS CAMPBELL
c/o Nell Campbell
8322 Starcrest
San Antonio, TX 78218

JOHN TURNER NEVITT, SR.
2601 Woodland Park Drive #5108
Houston, TX 77077-6168

CLYTIE HARRIS THOMAS PHELPS
7731 Broadway #217
San Antonio, TX 78209

**TRIAL AND APPELLATE COUNSEL FOR APPELLANTS -
PARRISH TRUST PARTIES**

RICHARD L. MERRILL
FABIO & MERRILL
Twelve Greenway Plaza, Suite 101
Houston, Texas 77046-1208

**APPELLANTS - LUMMIS PARTIES**

RANSOM CLARK LUMMIS
3431 Inwood Drive
Houston, TX 77019

FREDERICK R. LUMMIS II
600 Travis St., Ste. 6160
Houston, TX 77002

PALMER BRADLEY LUMMIS
1511 Washington Terrace
Ft. Worth, TX 76107

ROBERT L. BRADLEY, JR.
2186 Briarglen Drive
Houston, Texas 77027

WILLIAM R. LUMMIS, JR.
600 Travis Street
4200 Chase Tower
Houston, Texas 77002

**TRIAL AND APPELLATE COUNSEL FOR APPELLANTS -
LUMMIS PARTIES**

BERRY DUNBAR BOWEN
BOWEN FIRM
3014 Brazos Street
Houston, TX 77006

**APPELLEES**

DONALD ROGER MILLS
RHONDA MILLS
13840 FM 95 N
Nacogdoches, Texas 75961

BEVERLY MILLS POOL
1810 Leggett
Galena Park, Texas 77547

**TRIAL AND APPELLATE COUNSEL FOR APPELLEE**S

WILLIAM D. GUIDRY
JEFFREY BRITTON BATES
GUIDRY, BATES & HOYT ATTORNEY'S,  L.L.P.
118 East Hospital St. Ste. 100
Nacogdoches, Texas 75963

# TABLE OF CONTENTS

**PAGE**

**IDENTITY OF PARTIES AND COUNSEL** . . . . . . . . . . . . . . . . . . . . . . . . . .  I

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

**DEFINITION OF TERMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

**INDEX OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xiii

**NOTES REGARDING REPORTER's RECORD** . . . . . . . . . . . . . . . . . . . . .  xvii

**STATEMENT OF THE NATURE OF THE CASE, HISTORY OF THE
   CASE, AND RESULT OF THE CASE IN THE TRIAL COURT** . . .  xix

**APPELLANTS' ISSUES PRESENTED FOR RELIEF** . . . . . . . . . . . . . . . .  xxii

**A.** **Appellants' First Issue Presented For Relief**

The trial court erred in its determination of the legal construction and effect to be given the 1906 Deed and 1908 Release.

**B.** **Appellants' Second Issue Presented For Relief**

The trial court erred by admitting parol and extrinsic evidence to assist in the construction of the 1906 Deed and 1908 Release and then relying upon such evidence in entering judgment against Appellants.

**C.** **Appellants' Third Issue Presented For Relief**

The trial court's findings of fact numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, and 16, are really conclusions of law and are to be treated as such, but even if they were

findings of fact, they either have no support in the evidence or are against the preponderance of the evidence and the remaining findings numbered 3, 14, 17 and 18 are irrelevant and immaterial.

**D. Appellants' Fourth Issue Presented For Relief**

The trial court's final judgment was rendered based on an erroneous theory of law and the conclusions of law, including those incorrectly labeled as findings of fact, do not correctly follow applicable law.

**I. STATEMENT OF FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**II. SUMMARY OF THE ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . 10

**III. ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A. Appellants' First Issue Presented For Relief Restated and Argument and Authority in Support of Appellants' First Issue Presented For Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B. Appellants' Second Issue Presented For Relief Restated and Argument and Authority in Support of Appellants' Second Issue Presented For Relief . . . . . . . . . . . . . . . . . . . . 29

    C. Appellants' Third Issue Presented For Relief Restated and Argument and Authority in Support of Appellants' Third Issue Presented For Relief . . . . . . . . . . . . . . . . . . . . . . . . . 36

    D. Appellants' Fourth Issue Presented For Relief Restated and Argument and Authority in Support of Appellants' Fourth Issue Presented For Relief . . . . . . . . . . . . . . . . . . . . . . . . . 49

**IV. CONCLUSION AND PRAYER** . . . . . . . . . . . . . . . . . . . . . . . . . . 51

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**APPENDIX - NECESSARY CONTENTS** . . . . . . . After Certificate of Service

        **APPENDIX 1**     Final Judgment dated March 30, 2015

        **APPENDIX 2**     Findings of Fact and Conclusions of Law dated April 20, 2015

        **APPENDIX 3**     Copy of 1906 Deed

        **APPENDIX 4**     Copy of 1908 Release

        **APPENDIX 5**     Copy of 1967 Deed of Trust

**APPENDIX - OPTIONAL CONTENTS** . After Appendix - Necessary Contents

        **APPENDIX 6**     Copy of *Crumpton v. Scott*, 250 S.W.2d 953 (Tex.Civ.App.–Fort Worth 1952, n.r.e.)

# DEFINITION OF TERMS

1.    In this Brief, all references to the various volumes of the Clerk's Record will read "([Roman numeral for applicable volume number] C.R. at [applicable page number])", all references to the various volumes of the Reporter's Record will read "([Roman numeral for applicable volume number] R.R. at [applicable page number])", all references to Plaintiff's Exhibits in Volume 6 of the Reporter's Record will read "(VI R.R. P.Ex. [applicable exhibit number])", and all references to Defendant's Exhibits in Volume 6 of the Reporter's Record will read "(VI R.R. D.Ex. [applicable exhibit number]).  All references to multiple exhibits will read as "Exhs."

2.    The term "PARRISH Trust Parties" means Appellants Linda Ann Parrish Richardson and Gary Bruce Richardson, Co-Trustees of the M. C. Parrish, Jr. Testamentary Trust, Margaret Wilson Reckling and James Cooke Wilson, Individually and as Co-Independent Executors of the Estate of Betty Virginia Kiley Wilson, Deceased, and as Co-Trustees of All Trusts Created under the Will of Betty Virginia Kiley Wilson, Judy Cleveland Huppert, Janie Granger Spicer, John K. Hardy, Anne E. Davison, Individually and as Executor of the Estate of Thomas S. Davison, Deceased, Mary Gail Thomas Campbell, John Turner Nevitt, Sr., and Clytie Harris Thomas Phelps.

3.     The term "Lummis Parties" means Appellants Ransom Clark Lummis, Frederick R. Lummis II, Palmer Bradley Lummis, Robert L. Bradley, Jr., and William R. Lummis, Jr.

4.     Unless the context indicates otherwise, the term "Appellants" means and refers to all of Parrish Trust Parties and Lummis Parties.

5.     Unless the context indicates otherwise, the term "Appellees" means Appellees Donald Roger Mills and his wife, Rhonda Mills, and Beverly Mills Pool.

6.     The term "EOG Parties" means EOG Resources, Inc., Petrohawk Properties, LP, Tanos Energy Holdings, LLC, Tanos Exploration II, LLC, Adams Resources Exploration Corporation, and Susan Adams Smith, Amy Adam Strunk, and Kenneth S. Adams, IV, individually and as Independent Co-Executors of the Estate of Kenneth Stanley Adams, Jr., Deceased, all of whom had been Defendants in this case while it was in the trial court and were dismissed from this case by the trial court (II R.R. 471-475).

7.     The term "1906 Deed" means and refers to that certain deed dated July 9, 1906, but acknowledged on July 13, 1906, from S. A. Mills and his wife Saphronia Mills, R. E. Mills and his wife Mary Ann Mills, and Thos. Mills and his wife Z. A. Mills, as grantors to June C. Harris and Robt. Lindsey, and recorded in Volume 64, Page 64 of the Deed Records of Nacogdoches County, Texas (IV R.R. P.Ex. 2 and 2A

and IV R.R. D.Ex. 1), and a copy of which is attached as Appendix 3 in the Appendix-Necessary Contents.

8.      The term "1908 Release" means and refers to that instrument dated January 18, 1908, and recorded on April 5, 1927, in Volume 15, page 92 of the Oil and Gas Lease Records and again on July 14, 1934, in Volume 137, Page 576 of the Deed Records, both of Nacogdoches County, Texas (IV R.R. P.Ex. 3, 3A, and 4 and IV R.R. D.Ex. 2 and 2A) and a copy of which is attached as Appendix 4 in the Appendix-Necessary Contents.

9.      The term "160 Acre Tract" means and refers to that certain 160 acre tract out of the M. J. Mills Survey, A-407, Nacodoches County, Texas, being the same land described as 1st Tract in the 1906 Deed.

10.      The term "1967 Deed of Trust" means and refers to that instrument dated November 15, 1967, from Donald W. Mills and wife, Laura B. Mills, to L. J. Cappleman, as Trustee for the United States Government, acting through the Farmers Home Administration, as beneficiary, recorded in Volume 108, Page 341 of the Deed of Trust Records of Nacogdoches County, Texas (IV R.R. D.Ex. 3), and a copy of which is attached as Appendix 5 in the Appendix-Necessary Contents.

11.      The term "Appellants' Leases" means:

a. Oil, Gas and Mineral Lease dated January 27, 2006, from Linda Ann Parrish Richardson and Gary Bruce Richardson, Co-Trustees of the M. C. Parrish, Jr. Testamentary Trust, as Lessor, to Cinco Land & Exploration, Inc., as Lessee, covering 425.36 acres of land, more or less, in Nacogdoches County, Texas (VI R.R. D.Ex. 26);

b. Oil, Gas and Mineral Lease dated December 29, 2005, from Judy Cleveland Huppert, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 31);

c. Oil, Gas and Mineral Lease dated January 17, 2006, from Janie Granger Spicer, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 29);

d. Oil, Gas and Mineral Lease dated January 17, 2006, from Thomas S. Davison, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 30);

e. Oil, Gas and Mineral Lease dated effective May 8, 2006, from Clytie Harris Thomas Phelps and Mary Gail Thomas Campbell, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 37);

f. Oil, Gas and Mineral Lease dated effective January 13, 2006, from John K. Hardy, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 25);

g. Oil, Gas and Mineral Lease dated January 5, 2006, from John Turner Nevitt, Attorney-in-fact for Margaret Stuart Smith, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 27);

h. Oil, Gas and Mineral Lease dated January 5, 2006, from Betty Kiley Wilson, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 28);

i. Oil, Gas and Mineral Lease dated January 13, 2006, from Ransom Clark Lummis, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 35);

j.      Oil, Gas and Mineral Lease dated January 13, 2006, from Frederick R. Lummis, II, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 32);

k.      Oil, Gas and Mineral Lease dated January 13, 2006, from Palmer Bradley Lummis, as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 34);

l.      Oil, Gas and Mineral Lease dated January 13, 2006, from Robert L. Bradley, Jr., as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 36); and

m.      Oil, Gas and Mineral Lease dated January 13, 2006, from William R. Lummis, Jr., as Lessor, to Cinco Land & Exploration, Inc., as Lessee (VI R.R. D.Ex. 38).

12.     The term "Appellees' Leases" means:

a.      Oil, Gas and Mineral Lease dated April 2, 2007, from Donald Roger Mills, as Lessor, to Petrohawk Properties, L.P., as Lessee (VI R.R. P.Ex. 9) ;  and

b.      Oil, Gas and Mineral Lease dated April 2, 2007 from Beverly Mills Pool, as Lessor, to Petrohawk Properties, L.P., as Lessee (VI R.R. P.Ex. 10).

13.     The term "Mills Unit" means and refers to that certain pooled unit created by the Unit Designation for the EOG Resources, Inc. - Mills Gas Unit dated October 6, 2008, and executed by EOG, Petrohawk, Adams Resources, and K. S. Adams, Jr. (VI R.R. P.Ex 12 and D.Ex. 41), as amended by that certain Amendment and Supplement to Unit Designation for the EOG Resources, Inc. - Mills Gas Unit dated and made effective as of March 5, 2012, executed by EOG, Petrohawk, Adams Resources, and K. S. Adams, Jr. (VI R.R. D.Ex. 42).

# INDEX OF AUTHORITIES

**CASES**                                                                         **PAGE**

*2327 Manana LLC v. Summit*, 05-09-00107-CV (Tex.App.-Dallas 2010, pet. denied) (mem. op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Altman v. Blake*, 712 S.W.2d 117 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . 17

*American Manufacturers Mutual v. Schaefer*, 124 S.W.3d 154 (Tex. 2003) . . . 31

*Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550 (Tex. 2002) . . . . . 16-17

*Anderson v. Gilliland*, 624 S.W.2d 243 (Tex.Civ.App.–Dallas 1981, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Brown v. Brown*, 236 S.W.3d 343 (Tex.App.-Houston [1st Dist.] 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Bryant v. Cady*, 445 S.W.3d 815 (Tex.App.–Texarkana 2014, no pet.) . . . . . 18-19

*Cities of Allen v. R.R. Comm'n of Tex.*, 309 S.W.3d 563 (Tex.App.–Austin 2010, pet. filed) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*City of Houston v. Harris County Outdoor Adver. Ass'n,* 732 S.W.2d 42 (Tex. App.–Houston [14th Dist.] 1987, no writ) . . . . . . . . . . . . . . . . . . . 37

*Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 31

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Cooksey v. Sinder*, 682 S.W.2d 252 (Tex. 1984) (per curiam) . . . . . . . . . . . . . 46

*C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690 (5th Cir. 2001) . . . 33

*Crumpton v. Scott*, 250 S.W.2d 953 (Tex.Civ.App.–Ft. Worth 1952,
    writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24, 45, 47, Appendix 6

Danciger Oil & Refining Co. of Texas v. Powell, 154 S.W.2d 632
    (Tex. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447 (Tex. 2008) . . . . . . . . . . . . . 30

*Dyer v. Cotton*, 333 S.W.3d 703 (Tex. App.–Houston [1st Dist.]
    2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831
    (Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Geotech Energy Corp. v. Gulf States Telecomm. & Info. Sys., Inc.*,
    788 S.W.2d 386 (Tex. App.–Houston [14th Dist.] 1990, no writ) . . . . . . 20

*Greenberg Trourig of New York, P.C. v. Moody*, 161 S.W.3d 56
    (Tex.App.–Houston [14th Dist.] 2005, no pet.) . . . . . . . . . . . . . . . . 33, 39

*Houston Natural Gas Corp. v. Pearce*, 311 S.W.2d 899
    (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.) . . . . . . . . . . . . . . . 36, 38

*Jones v. Fuller*, 856 S.W.2d 597, 602 (Tex.App.–Waco 1993, writ denied) . . . 17

*Lindsay v. Texas Iron & Steel Co.*, 9 S.W. 2d 287
    (Tex.Civ.App.–Texarkana 1928, writ ref'd) . . . . . . . . . . . . . . . . . . . 21

*Loomis v. Gulf Oil Corp.*, 123 S.W.2d 501 (Tex.Civ.App.–Eastland 1938,
    writ ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Luckel v. White*, 810 S. W.2d 459 (Tex. 1991) . . . . . . . . . . . . . . . . . . . 16, 24, 27

*Mars v. Morris*, 106 S.W. 430, 434 (Tex. Civ. App. 1907) . . . . . . . . . . . . . . 44

*In re Moers*, 104 S.W.3d 609 (Tex.App.-Houston [1st Dist.] 2003, no pet.) . . . 49

*Moon Royalty, LLC v. Boldrick Partners d/b/a Statewide Minerals Co.*,
244 S.W.3d 391 (Tex.App.–Eastland 2007, no pet.) . . . . . . . . . . . . . . . 31

*Mortgage & Trust, Inc. v. Bonner & Co., Inc.*, 572 S.W.2d 344
(Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e.) . . . . . . . . . . . . . 37

*Munguia v. Paiz*, 404 S.W.3d 47 (Tex.Civ.App.–San Antonio 1966,
no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42-43

*Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995) . . . 32

*Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188 (Tex. 2003) . . . . . . 20-21, 49

*Noble Mortg. & Invs., LLC v. D&M Vision Invs., LLC*, 340 S.W.3d 65
(Tex. App. - Houston [1st Dist.] 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . 47

*Peters v. Clements*, 46 Tex. 114 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Ralph v. Magnolia Petroleum Company*, 95 S.W.2d 222
(Tex.Civ.App.–El Paso 1936, writ ref'd) . . . . . . . . . . . . . . . . . . . . . . . . 21

*Savage v. Doyle*, 153 S.W.3d 231 (Tex.App.–Beaumont 2004, no pet.) . . . . . 34

*Tate v. Sartain*, 793 S.W.2d 45 (Tex.App.-Texarkana 1990, writ denied) . 17, 28

*Teal Trading v. Champee Springs Ranches*, 432 S.W.3d 381
(Tex.App.–San Antonio 2014, pet. denied) . . . . . . . . . . . . . . . . . . . . . . 44

*Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951) . . . . . . . 31

*Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex. 1982) . . 28, 45

## STATUTES

TEX. PROP. CODE § 5.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

TEX. PROP. CODE § 11.07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45-46

TEX. PROP. CODE §13.001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

TEX. PROP. CODE § 13.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 46

**RULES**

TEX. R. EVID. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## NOTES REGARDING REPORTER's RECORD

There is a typographical error in the Index of Trial Exhibits prepared by the Court Reporter with regard to Defendants' Exhibit 54 (I R.R. 21, III R.R. 20, and VI R.R. 19) in that the Index lists Defendants' Exhibit 54 as not being admitted, notwithstanding that such exhibit was admitted (IV R.R. 18). Since the Reporter's Record clearly discloses that Defendants' Exhibit 54 was admitted as evidence, Appellants do not believe it necessary to obtain a supplement from the Court Reporter to correct an obvious typographical error in the Index of Trial Exhibits, but instead believe that, for appellate purposes, this note is sufficient to document that the Index entry for Defendants' Exhibit 54 should have shown that it was admitted on Page 18 of Volume 4 of the Reporter's Record.

The Reporter's Record omits Defendants' Exhibit 52, which was a settlement agreement between Appellants and EOG Parties. This Exhibit was subject to a confidentiality agreement between Appellants and EOG Parties, was placed under seal by the trial court, and requires a motion to be filed and order obtained from the trial court to enable the Court Reporter to supplement the record with a copy. Ben Richardson's testimony (IV R.R. 37-47) essentially describes what this Exhibit was and accomplished. For the reasons argued below in this Brief, the evidence of the settlement amount paid to Appellants by EOG Parties is no more germane to the legal

interpretation to be afforded the 1906 Deed and 1908 Release by this Court than is the evidence that EOG Parties initially paid royalties to Appellees. Such events occurred more than 100 years after the execution of both the 1906 Deed and 1908 Release and, as such, would not have any bearing on the legal interpretation of these instruments. For such reasons, Appellants have elected neither to attempt to obtain the consent of the EOG Parties to unseal such settlement agreement nor to file a motion to obtain an order from the trial court allowing the Court Reporter to provide this Court with a copy of such settlement agreement.

## STATEMENT OF THE NATURE OF THE CASE AND COURSE OF PROCEEDINGS AND RESULT OF THE CASE IN THE TRIAL COURT

**A.     Statement of the Nature of the Case**

This suit involves the interpretation and effect to be given to the 1906 Deed and the 1908 Release, specifically whether the 1906 Deed was an instrument conveying an undivided one-half interest in the mineral estate under the 160 Acre Tract and whether the instrument described in and released by the 1908 Release was the 1906 Deed or a 1907 instrument which had not been recorded in Nacogdoches County.

**B.     Course of Proceedings and Result of the Case in the Trial Court**

This suit was filed on August 23, 2011 by Appellees against Parrish Trust Parties, Lummis Parties and the EOG Parties, or predecessors in interest to the EOG Parties (III C.R. 770-771).

In June of 2012, Hon. Guy Griffin, who was then the active judge of the 123rd District Court, was assigned to the 145th District Court to hear this suit (II R.R. 360).

By time of trial, each of Appellants and Appellees had entered into separate settlements with the EOG Parties which resulted in the EOG Parties being dismissed from the suit and leaving Appellants and Appellees as the sole remaining parties to the suit (II C.R. 467-475, VI R.R. D.Ex. 52 and 53).

A bench trial was held on March 3-4, 2015 (III R.R. 1 and IV R.R. 1). On March 30, 2015, the trial court entered Final Judgment in favor of Appellees against Parrish Trust Parties and Lummis Parties (III C.R. 686-690). Following Appellants' timely request for findings of fact and conclusions of law (III C.R. 693-694), the trial court entered Findings of Fact and Conclusions of Law (III C.R. 695-699).

On April 28, 2015, Appellants timely filed their Motion for New Trial (III C.R. 700-718), which was subsequently overruled by operation of law.

On June 26, 2015, Appellants timely filed their Notice of Appeal (III C. R. 721-723, as well as their requests for the Clerk's Record and Reporter's Record (III R.R. 724-728 and 729-732). On June 29, 2015, Appellants filed an Amended Notice of Appeal (III C.R. 736-739) and a supplemental request for supplementation of the Clerk's Record (III R. R. 733-735).

Both the Notice of Appeal and Amended Notice of Appeal stated that, in addition to the trial court's Final Judgment dated March 30, 2015, Appellants also intended to appeal an Order Overruling Defendants' Motion to Reopen Case and to Correct Stipulation signed by the Hon. Guy Griffin and dated March 30, 2015, and an Order Overruling Defendants' Motion for Trial Amendment or Amendment to Conform to Issues Tried without Objection signed by the Hon. Guy Griffin and dated March 30, 2015 (collectively "two orders"). This Brief omits any points of error

relating to the two orders as Appellants have elected to limit this appeal to the Final

Judgment.

# APPELLANTS' ISSUES PRESENTED FOR RELIEF

**A.  Appellants' First Issue Presented For Relief**

The trial court erred in its determination of the legal construction and effect to be given the 1906 Deed and 1908 Release.

**B.  Appellants' Second Issue Presented For Relief**

The trial court erred by admitting parol and extrinsic evidence to assist in the construction of the 1906 Deed and 1908 Release and then relying upon such evidence in entering judgment against Appellants.

**C.  Appellants' Third Issue Presented For Relief**

The trial court's findings of fact numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, and 16, are really conclusions of law and are to be treated as such, but even if they were findings of fact, they either have no support in the evidence or are against the preponderance of the evidence, and the remaining findings numbered 3, 14, 17 and 18 are irrelevant and immaterial.

**D.  Appellants' Fourth Issue Presented For Relief**

The trial court's final judgment was rendered based on an erroneous theory of law and the conclusions of law, including those incorrectly labeled as findings of fact, do not correctly follow applicable law.

C.A. NO. 12-15-00170-CV

IN THE
COURT OF APPEALS FOR THE STATE OF TEXAS
TWELFTH SUPREME JUDICIAL DISTRICT
TYLER, TEXAS

LINDA ANN PARRISH RICHARDSON and GARY BRUCE
RICHARDSON, CO-TRUSTEES OF THE M. C. PARRISH, JR.
TESTAMENTARY TRUST *et al*,
APPELLANTS

VS.

DONALD ROGER MILLS *et al*,

APPELLEES

ON APPEAL FROM THE 145TH JUDICIAL DISTRICT COURT
OF NACOGDOCHES COUNTY, TEXAS

BRIEF FOR APPELLANTS

TO THE HONORABLE COURT OF APPEALS:

PARRISH TRUST PARTIES and LUMMIS PARTIES, Appellants, respectfully file this brief in appeal of the Final Judgment dated March 30, 2015, rendered in favor of DONALD ROGER MILLS and his wife, RHONDA MILLS, and BEVERLY MILLS POOL, Appellees, in Cause No. C1127605, by the 145th Judicial District Court of Nacogdoches County, Texas.

## I. STATEMENT OF FACTS

### A. 1906 Deed and 1908 Release

This Lawsuit concerns the title to an undivided one-half of the minerals underlying the 160 Acre Tract which was conveyed by the 1906 Deed to June C. Harris and Robt. Lindsey. At the time the 1906 Deed was executed, S. A. Mills and his wife Saphronia Mills, R. E. Mills and his wife Mary Ann Mills, and Thos. Mills and his wife Z. A. Mills, the grantors in the 1906 Deed, owned sufficient interest to have conveyed the undivided one-half interest in the minerals in the 160 Acre Tract at issue to June C. Harris and Robt. Lindsey (VI R.R. P.Ex. 41).

The 1906 Deed, in pertinent part, provided in its granting and habendum clauses as follows:

> Therefore, in consideration of the premises, the services rendered and to be rendered by said parties of the second part, as hereinbefore specified and set forth, we, the said S. A. Mills, Saphronia Mills, R. E. Mills, Mary Ann Mills, Thos Mills and Z. A. Mills have bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto Robt Lindsey and June C. Harris, the parties of the second part, an undivided one half interest in the oil, gas and other minerals which do or may exist in, under and upon the several tracts of land hereinafter described, with the right of ingress and egress, and such other and further rights and privileges as are necessary and proper for the performance of the work of prospecting, testing, demonstrating, developing and operating for oil, gas or other minerals, the land and premises are described as follows:

Situated in Nacogdoches County, Texas about twelve miles Northeasterly from the town of Nacogdoches,

1st Tract, Being the property of S.A. Mills and being 160 acres of the M.J. Mills preemption and all of said preemption

. . .

To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Robt. Lindsey and June C. Harris, their heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said remises unto the said Robt. Lindsey and June C. Harris, their heirs and assigns against every person whomsoever lawfully claiming or to claim the ame or any part thereof.

In fulfillment of the consideration of "the services rendered and to be rendered", June C. Harris and Robt. Lindsey performed title curative work for one or more of the grantors of the 1906 Deed (IV R.R. 48-52, VI RR. D.Ex. 45-50), were involved in obtaining the drilling of a well in 1907 located about 1 to 1 ½ miles south of the 160 Acre Tract (IV R.R. 14-21, VI R.R. D.Ex 54), and, as the 1908 Release specifically recites, were involved in having Nacogdoches Land Company, a firm of which they were the owners, take an oil and gas lease in 1907 from three of the grantors of the 1906 Deed.

In 1908, June C. Harris and Robt. Lindsey executed the 1908 Release but, for whatever reason, it was not recorded until April 5, 1927, when it was recorded in the

Nacogdoches County Oil and Gas Lease Records (VI R.R. P.Ex. 3 and D.Ex. 2), and then again on July 14, 1934, when it was recorded in the Nacogdoches County Deed Records (VI R.R. P.Ex. 4 and D.Ex. 2A). The instrument described in and released by the 1908 Release and the reason for the release of such instrument was described in the first two paragraphs of the 1908 Release as follows:

> WHEREAS on the 9th day of July, 1907, R. E. Mills, Tom Mills and Sam Mills executed and delivered to Nacogdoches Land Company, a firm composed of Robt Lindsey and June C. Harris, a certain contract or lease covering land described in said contract or lease, a part of the John Cooper, T. J. Cooper, and the M. J. Mills surveys in Nacogdoches County, Texas, providing for the development and exploitation of said property for oil and other mineral, and

> WHEREAS by the terms of said contract or lease the time for said development has expired rendering null and void said lease.

All of the parties to the 1906 Deed and 1908 Release are now deceased (III R.R. 54-55, VI R.R. P.Ex. 41 [Exhs. C1, C3, and D-6]). June C. Harris, one of the two grantees in the 1906 Deed, died in 1941 (VI R.R. P.Ex. 41 [Exhibit C1]) and Robert Lindsey, the other grantee, died by 1959 when his will was filed for probate (VI R.R. P.Ex. 41 [Exhibit C3]). On the grantors' side, S. A. Mills died in 1940 (III R.R. 54-55, VI R.R. P.Ex. 41 [Exhibit D-6]), Saphronia Mills was still alive in 1950 but died sometime in the 1950's (III R.R. 54), and R. E. Mills, Mary Ann Mills, Thos. Mills and Z. A. Mills all died in the 1940's (III R.R. 55).

**B.     Appellants' Title to the Interest Conveyed by the 1906 Deed**

Appellants now own the vast majority of the interest conveyed by the 1906 Deed (VI R.R. P.Ex 41) being all of the interest conveyed by the 1906 Deed except for the interest which Appellees had acquired in 2011 from Thomas L. Husbands, Robbie V. Russell, and Triple Crown Acquisitions, LLC, who were successors and assigns of a small portion of the mineral interest conveyed by the 1906 Deed (VI R.R. P.Ex. 13, 14, 15 and 41).

After the 1906 Deed and prior to 2005 and the execution of Appellants' Leases, Parrish Trust Parties and Lummis Parties and their respective predecessors in title evidenced their ownership of and claim of title to the undivided one-half interest in the minerals underlying the 160 Acre Tract  and/or all or portions of the other tracts described in and conveyed by the 1906 Deed by the execution of a total of eighteen (18) oil and gas leases between 1934 and 1985 (IV R.R. 33-35, VI R.R. D.Exhs. 7-24)

Commencing in late December, 2005 and extending through the first half of 2006, Cinco Land & Exploration, Inc. acquired Appellants' Leases (IV R.R. 35-36, VI R.R. D.Exhs. 25-39) and subsequently assigned Appellants' Leases to Petrohawk Properties, L.P.  (IV R.R. 36, VI R.R. D.Ex. 40).

## C.    Appellees' Interest in the 160 Acre Tract

The 1906 Deed only conveyed an undivided one-half interest in the mineral estate of the 160 Acre Tract, and S. A. Mills, one of the grantors of the 1906 Deed, retained the surface and remaining one-half of the minerals under the 160 Acre Tract[1]. Commencing in 1940 and continuing through 1950, D. W. Mills obtained title to the 160 Acre Tract, save and except for the minerals conveyed by the 1906 Deed, from inheritance from his father S. A. Mills (VI R.R. P.Ex. 41 [Ex. D-6]) and from conveyances by Rethus Benson and her husband Buster Benson, George M. Mills and his wife Jose Mills, and Sophronia Mills and Rethus Benson and her husband Mark E. Benson. (VI R.R. P.Ex. 41 [Exhs. D-4, D-5, and D-7]).

On March 21, 1962, D. W. Mills and his wife Laura Mills conveyed an undivided 80 acre interest in the minerals in and under the 160 Acre Tract to Jake Hamon (VI R.R. P.Ex. 41 [Ex.D-8]), which was corrected by a correction deed dated August 28, 1962 (VI R.R. P.Exhs. 6 and 41 [Ex.D-11])[2].

---

[1]    Although the 1906 Deed was signed by three couples, Sophronia Mills' affidavit (VI R.R. P.Ex. 41 [Ex. D-6]) reflects that the 160 Acre Tract was owned by S. A. Mills at the time of the 1906 Deed as a result of a 1905 conveyance from Ellen E. Mills and was subsequently used and claimed by S. A. Mills and his wife Sophronia Mills as their homestead.

[2]    Jake Hamon took oil and gas leases from two of Appellants' predecessors in title in 1965 (VI R.R. D. Exhs. 8 and 9), but did not take a lease from D. W. Mills and his wife Laura Mills, from whom Mr. Hamon had acquired the 80 acre undivided mineral interest in 1962.

In 1967, D. W. Mills and his wife executed the 1967 Deed of Trust covering the 160 Acre Tract, which instrument specifically recognized and stated that the 1906 Deed had conveyed one-half of the minerals in and under the 160 Acre Tract.

In 1968, 1975 and 1981, D. W. Mills and his wife and Donald Roger Mills and his wife executed three oil and gas leases covering the 160 Acre Tract. Explanations for the execution of these leases were: (i) the 160 Acre Tract had not been surveyed and might contain more than 160 Acres, in which event and due to the 1962 conveyance into Jake Hamon being of an undivided 80 acre interest in the 160 Acre Tract rather than a fractional interest, Appellees and, before them, their parents, may have owned whatever small difference would exist between an undivided one-half of the minerals in the acreage actually encompassed by the 160 Acre Tract and 80 mineral acres (III R.R. 74, 85-86, 266. IV R.R. 32-33), (ii) mineral leasing practices of brokers who lease based upon the identity of lessors who executed prior leases and who would have found the lease executed by D. W. Mills in 1960 prior to the conveyance of the mineral interest to Jake Hamon, and then the subsequent leases (III R.R. 75-76 and 213-215. IV R.R. 30), and (iii) the practice of taking protection leases (III R.R. 215-217, IV R.R. 7-8).

By the end of 2008, Donald Roger Mills and his sister Beverly Mills Pool had been gifted all of the interest which their parents, D. W. Mills and his wife, Laura

Mills, owned in the 160 Acre Tract and are still the owners of such interest as they received from their parents (III R.R. 45, VI R.R. P.Exhs. 11 and 41 [Exhs. D-14 and D-15])[3].

In 2007, Appellees Donald Roger Mills and Beverly Mills Pool granted Appellees' Leases covering the 160 Acre Tract to Petrohawk Properties, L.P.

## D. Mills Unit

On October 6, 2008, EOG Resources, Inc., Petrohawk Properties, LP, Adams Resources Exploration Corporation, and K. S. Adams, Jr. created the Mills Unit (VI R.R. P.Ex. 12 and D.Ex. 41). The Mills Unit was formed around the Mills #1 Well which was located and completed on the 160 Acre Tract (III R.R. 45-46, VI R.R. P.Ex. 12 and D.Ex. 41). This well represents the first time oil and gas exploration was conducted upon and production obtained from the 160 Acre Tract (III R.R. 45).

---

[3]  Both the 1989 gift deed from D. W. Mills and his wife Laura B. Mills (VI R.R. P.Ex. 41 [D-14]) and the 2008 gift deed from Laura Belle Mills (VI R.R. P.Ex. 11 and 41 [D-15]) named only Appellees Donald Roger Mills and Beverly Mills Pool as grantees. Since these were gifts and conveyed separate property interests to the named grantees, Donald Roger Mills' wife Rhonda Mills, who was also named as a party in this suit and is one of the Appellees, did not receive any interest in the 160 Acre Tract as a result of these conveyances. Rhonda Mills would only own an interest in the 160 Acre Tract as a result of the 2011 conveyances which all of Appellees received from Thomas L. Husbands, Robbie V. Russell, and Triple Crown Acquisitions, LLC (VI R.R. P.Ex. 13, 14, 15 and 41). Therefore, the term "Appellees", although including Rhonda Mills, will, as used herein and when having reference to the interest claimed in the 160 Acre Tract as a result of being successors in interest of the grantors of the 1906 Deed and/or of D. W. Mills and his wife Laura Belle Mills (as opposed to the successors in interest of the grantees of the 1906 Deed), be referring to Donald Roger Mills and Beverly Mills Pool.

Effective as of March 5, 2012, EOG Resources, Inc., Petrohawk Properties, LP, Adams Resources Exploration Corporation, and K. S. Adams, Jr., amended the Mills Unit to specifically describe Appellants' Leases as being included in the Mills Unit (VI R.R. D.Ex. 42).

Royalties based upon production from the Mills Unit were initially paid by EOG Parties to Appellees but were then placed in suspense (III R.R. 46-47). In a settlement with Appellants, EOG Parties paid substantially more to Appellants than they had paid to Appellees in royalties, to resolve Appellants' claims for past due royalties and unpooled royalties due upon production from the Mills Unit (IV R.R. 45-47).

All royalties are now being paid into the registry of the court (II C.R. 467-470, 471-475).

**E.    No Claims against Appellants and their Predecessors in Interest Prior to this Suit**

Until this suit was filed, no claim had ever been asserted against Appellants and their predecessors in title by Appellees or any of their predecessors in title (including, but not limited to, the grantors under the 1906 Deed and D. W. Mills and his wife Laura Mills, the parents of and predecessors in title to Appellees Donald Roger Mills and Beverly Mills Pool) that the 1906 Deed did not convey title to an undivided one-half mineral interest in the 160 Acre Tract, that the 1908 Release resulted in a

reconveyance of the interest conveyed by the 1906 Deed, or that there was any reason why the 1906 Deed was ineffective, whether for failure of consideration or otherwise (III R.R. 56-58).

## II. SUMMARY OF THE ARGUMENT

This appeal involves the legal interpretation and effect to be given to the 1906 Deed and 1908 Release. Although the trial court heard testimony regarding the 1906 Deed and 1908 Release, such testimony was both unnecessary and improper as neither the 1906 Deed nor 1908 Release are ambiguous and the interpretation of an unambiguous deed is a matter of law for which parol and extrinsic testimony and evidence is improper.

Neither Appellants nor Appellees produced any witnesses with actual knowledge of the events surrounding the 1906 Deed and 1908 Release since everybody associated with either of such instruments had died by the late 1950's and nobody in the courtroom was even alive when either of such instruments were executed. Instead, Appellees called upon Robert Minton, an attorney, to testify regarding his legal opinions of the effect and interpretation to be afforded the 1906 Deed and 1908 Release, and Appellants countered with Gary Ellison, an attorney board certified in oil and gas law in Texas. Mr. Minton's legal opinions constituted the only "evidence" adduced by Appellees and which the trial court relied upon in

-10-

interpreting and construing the 1906 Deed and 1908 Release; however, by Mr. Minton's own admission, his testimony constituted his legal opinion regarding such instruments and it was really the province of the court to legally interpret such instruments (III R.R. 126). Appellants timely and properly objected to Mr. Minton's testimony but the trial court still allowed it (III R.R. 95, 96, 103, 141-143, 146, 149-150). In Texas jurisprudence, expert testimony which consists of legal conclusions and opinions is not admissible at trial and the trial court erred both in allowing it and then relying upon it.

Utilizing the "four corners" doctrine, it is clear that, as a matter of law, the 1906 Deed was a conveyance of a present interest in one-half of the minerals underlying the lands described in such deed, including the 160 Acre Tract. Applying such doctrine, it is also clear that the 1908 Release did not release or reconvey the mineral interests conveyed by the 1906 Deed.

In its findings of fact and conclusions of law (III R.R. 695-699), the trial court did not state its conclusion as to whether the 1906 Deed was either a fee conveyance, as averred by Appellants, or an oil and gas lease, executory contract, or "hybrid" instrument, as averred by Appellees; however, considering the language of "contract" and "executory promises" used by the trial court in its findings and conclusions and

the judgment in favor of Appellees, it seems apparent that the trial court did not construe the 1906 Deed as a fee conveyance.

The 1906 Deed could not have been an executory contract, which can only exist when there has not been a fee conveyance of a present interest in real property; *i.e.*, for an executory contract to exist in a real property transaction, the seller must retain legal title to the property even though possession passes to the buyer. The 1906 Deed conveyed a present interest in and to one-half of the minerals underlying the lands described in the 1906 Deed to the grantees and the grantors did not retain any title to such one-half interest in the minerals as conveyed to the grantees.

There is no such thing as a "hybrid" instrument under Texas law when it comes to real property transactions and, even if the 1906 Deed embodied characteristics which might normally be associated with an instrument other than a fee conveyance, it was incumbent upon the trial court to determine, from the "four corners" of the 1906 Deed and as a matter of law, what was the essential purpose and meaning of the 1906 Deed.

The 1906 Deed is also not an oil and gas lease. Instead it was a perpetual fee conveyance of an one-half mineral interest in the 160 Acre Tract and did not create a fee simple determinable estate, did not provide for royalties and did not contain any of the other primary qualities typically found in oil and gas leases.

A deed which has been executed and delivered does not have to be supported by consideration to be valid. Further, a suit to set aside a conveyance due to failure of consideration must be brought before the four (4) years statute of limitations period has expired. Under any scenario or theory, the passage of more than 105 years before the filing of a suit which asserts a failure of consideration as grounds for setting aside a conveyance is more than sufficient to bar the suit upon limitations grounds. Further, Appellees' predecessors in title, Donald W. Mills and his wife Laura B. Mills, recognized and affirmed in the 1967 Deed of Trust that the 1906 Deed had conveyed an undivided one half of the minerals in and under the 160 Acre Tract, which estops Appellees from asserting otherwise.

The 1908 Release also could not have been referring to the 1906 Deed. Although the indices maintained by the Nacogdoches County Clerk do not disclose that the instrument referenced and described in the 1908 Release was recorded, it is readily apparent from comparing the 1906 Deed to the instrument described in the 1908 Release that the 1906 Deed was not the instrument described in the 1908 Release. The 1908 Release described a "contract or lease" dated "on the 9th day of July, 1907", "delivered to Nacogdoches Land Company, a firm composed of Robt Lindsey and June C. Harris", and "providing for the development and exploitation of said property for oil and other mineral". The 1908 Release then went further by

-13-

stating that pursuant to "the terms of said contract or lease the time for said development has expired rendering null and void said lease." The instrument described in the 1908 Release is obviously an oil and gas lease dated in 1907 which contained a specified term, the expiration of which triggered a reversion to the lessors. By contrast, the 1906 Deed was entered into in 1906, not 1907, the grantee in the 1906 Deed was not "Nacogdoches Land Company", and the 1906 Deed conveyed a fee simple determinable estate without any provision instead of a fee simple determinable estate which would end upon the occurrence of either expiration of a specified time or termination of production and/or operations. Any reasonable construction of the 1908 Release is that it described an oil and gas lease entered into in 1907, which, for whatever reason, was not recorded in the real property records of Nacogdoches County, and that it did not release or reconvey the interests conveyed by the 1906 Deed. Further a release is an improper vehicle to attempt reconveyance of a mineral interest and would be legally insufficient to reconvey fee mineral interests.

With the exception of findings of fact numbered 3, 4, 17, and 18, all of the trial court's findings of fact constituted, in whole or in part, legal conclusions. As a result, none of such findings of fact are binding upon this Court of Appeals and are to be treated and reviewed as legal conclusions rather than accorded the weight normally

associated with factual findings. As legal conclusions, they fail to properly apply applicable law. Even if any of such findings were factual findings, they still lack any support in the evidence or are against the preponderance of the evidence.

The trial court's conclusions of law, including those findings of fact which were improperly designated as findings instead of conclusions, fail to properly interpret and follow applicable law.

For all of the above reasons, the trial court should have rendered judgment in favor of Appellants that the 1906 Deed was a fee conveyance which conveyed an undivided one-half of the minerals in and under the 160 Acre Tract and that the 1908 Release did not "release" the 1906 Deed. The trial court's failure to do so constitutes reversible error.

### III. ARGUMENT

**A.** **Appellants' First Issue Presented for Relief Restated and Argument and Authorities in Support of Appellants' First Issue Presented for Relief**

**1.** **Appellants' First Issue Presented for Relief Restated**

The trial court erred in its determination of the legal construction and effect to be given the 1906 Deed and 1908 Release.

**2. Argument and Authorities in Support of Appellants' First Issue Presented for Relief**

**A. Standards for Construction of Conveyancing Documents and Contracts**

In construing the 1906 Deed and 1908 Release, the trial court was required to follow the "four comers" rule. As stated in *Luckel v. White*, 810 S. W.2d 459 (Tex. 1991):

> The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the "four comers" rule. *Garrett v. Dils Co.*, 157 Tex. 92, 94-95, 299 S.W.2d 904, 906 (1957); 1 E. KUNTZ, THE LAW OF OIL AND GAS, § 16.1 (1987); 6A R. POWELL, THE LAW OF REAL PROPERTY, p 899[3], at 81A-108 (P. Rohan ed. 1991). "That intention, when ascertained, prevails over arbitrary rules." *Harris v. Windsor, 156 Tex. 324, 328, 294 S.W.2d 798, 800 (1956)*. The court, when seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed. *Altman v. Blake*, 712 S. W.2d at 118. "[T]he parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement." Id. Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Benge v. Scharbauer*, 152 Tex. 447, 451, 259 S.W.2d 166, 167 (1953). The court should "not strike down any part of the deed, unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part thereof."

*Id.* at 461-462.

*See also Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550 (Tex. 2002) wherein the Texas Supreme Court stated:

In construing an unambiguous lease, our primary duty is to ascertain the parties' intent as expressed within the lease's four corners. *Luckel*, 819 S.W.2d at 461; *see also Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368, 372-73 (Tex. 2001). We give the lease's language its plain, grammatical meaning unless doing so would clearly defeat the parties' intentions. *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966). We examine the entire lease and attempt to harmonize all its parts, even if different parts appear contradictory or inconsistent. *Luckel*, 819 S.W.2d at 462. That is because we presume that the parties to a lease intend every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). However, we will not hold the lease's language to impose a special limitation on the grant unless the language is so clear, precise, and unequivocal that we can reasonably give it no other meaning. *Fox*, 398 S.W.2d at 92.

*Id.* at 554.

In short, the trial court was required to ascertain the intent of the parties after considering and giving effect to all parts of the 1906 Deed and then to do likewise with the 1908 Release. *See Jones v. Fuller*, 856 S.W.2d 597, 602 (Tex.App.–Waco 1993, writ denied). The trial court also should not have accepted evidence on the construction of the 1906 Deed and 1908 Release as the construction of an unambiguous instruments is not a question of fact, but is instead a question of law for the court. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986). *See also Tate v. Sartain*, 793 S.W.2d 45, 47 (Tex.App.-Texarkana 1990, writ denied) which affirmed that the construction of a release instrument is a matter of law for the court.

Applying the same rules and logic, the only plausible and logical reading of the 1908 Release is that it did not apply to the 1906 Deed but instead released an

unrecorded oil and gas lease which had been entered into in 1907, not 1906, and which had expired by its own terms.

**B.      The 1906 Deed is not an Executory Contract, Lease or "Hybrid" Instrument, but is instead a Fee Conveyance**

The trial court's findings of fact and conclusions of law (III C.R. 695-699) do not specifically identify what type of instrument the trial court determined the 1906 Deed to be. Based upon the live pleadings, the choices presented were: (i) a fee conveyance as asserted by Appellants (II C.R. 440-462), or (ii) either an executory contract, hybrid instrument, or oil and gas lease as asserted by Appellees (II C.R. 410-415, 416-439, 463-466). Instead, the findings and conclusions only reference that it was a contract for which the grantees' "executory promises" went unfulfilled. As a result, it is impossible to know exactly what type of instrument the trial court construed the 1906 Deed to be. Whatever construction can be implied from the trial court's findings and conclusions does not, however, result in anything other than that the trial court erred in its legal construction of the 1906 Deed and 1908 Release.

In *Bryant v. Cady*, 445 S.W.3d 815 (Tex.App.–Texarkana 2014, no pet.), the Court reiterated long standing rules regarding the meaning of an executory contract:

> Executory contracts are also known as contracts for deed. *Morton*, 412 S.W.3d at 507; *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 429 (Tex. 2005). A contract for deed differs from a conventional contract for the sale of realty, in which the seller and purchaser mutually agree to complete payment and title transfer on a date certain at which

time the purchaser generally obtains both title and possession. *Shook v. Walden*, 368 S.W.3d 604, 625 (Tex. App. — Austin 2012, pet. denied). An executory contract for real property typically results in the buyer being entitled to immediate possession of the property on the making of a down payment. *Ward v. Malone*, 115 S.W.3d 267, 271 (Tex. App. — Corpus Christi 2003, pet. denied). A contract for deed differs from a mortgage in that it allows the seller to retain title to the property until the purchaser has made all the purchase payments. *Flores*, 185 S.W.3d at 429.

*Id*. at 819

The 1906 Deed is not a contract for deed and the grantors did not reserve any title as to the undivided one-half mineral interest conveyed to the grantees. Instead, the 1906 Deed contains words of present grant:

> . . . have bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto Robt Lindsey and June C. Harris, the parties of the second part, an undivided one half interest in the oil, gas and other minerals which do or may exist in, under and upon the several tracts of land hereinafter described . . .

and a habendum clause with general warranty of title:

> To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Robt. Lindsey and June C. Harris, their heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said remises unto the said Robt. Lindsey and June C. Harris, their heirs and assigns against every person whomsoever lawfully claiming or to claim the ame or any part thereof.

The granting clause, habendum and warranty clauses are all classic examples of a fee conveyance and not a contract for deed or executory contract. The 1906 Deed is

devoid of reservations, conditions precedent, conditions subsequent, liens or other

covenants customarily used by grantors to enforce and protect rights, including the

preservation of rights to recover title from the grantees if the grantees failed to

perform future consideration.

The 1906 Deed is also neither an oil and gas lease or "hybrid" instrument[4]. Its

characterization is dependent upon the type of estate which was conveyed by the 1906

Deed. The interest conveyed by an oil and gas lease to the lessee is a fee simple

determinable estate and the interest retained by the lessor is a possibility of reverter.

As stated in *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188 (Tex. 2003):

> In Texas it has long been recognized that an oil and gas lease is not a
> "lease" in the traditional sense of a lease of the surface of real property.
> In a typical oil or gas lease, the lessor is a grantor and grants a fee
> simple determinable interest to the lessee, who is actually a grantee.
> Consequently, the lessee/grantee acquires ownership of all the minerals
> in place that the lessor/grantor owned and purported to lease, subject to

---

[4]   Counsel for Appellants have been unable to find a single case where the term "hybrid" appears in describing any sort of real estate instrument, and Mr. Minton, Appellees' legal expert, stated he had never come across the term in any case involving the legal construction of deeds or leases (III R.R. 119). In *Geotech Energy Corp. v. Gulf States Telecomm. & Info. Sys., Inc.*, 788 S.W.2d 386 (Tex. App. - Hous. [14th Dist.] 1990, no writ) the term "hybrid" appeared in connection with a contract as to which the issue was whether the contract, which provided for both goods and services, should be construed primarily as a contract for goods or as a contract for services. The *Geotech* court stated that "[w]hen faced with such a hybrid contract we must determine whether the essence of the contract is the sale of materials or services." *Id*. at 389. Consequently, if the 1906 Deed did contain provisions which are not normally contained in mineral deeds, then it is incumbent upon the court to determine the essence of the 1906 Deed and categorize it in accordance with what it determines its essence to be, still utilizing the "four corners" doctrine.  Any reasonable interpretation of the 1906 Deed would result in its essence being a fee simple conveyance of one-half of the minerals in the 160 Acre Tract.

the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate.

*Id*. at 192 (Footnotes omitted).

The inclusion of mineral development language in the 1906 Deed also did not change its character as a fee conveyance to an oil and gas lease or allow the trial court to impute terms within which development actions had to take place. *See Danciger Oil & Refining Co. of Texas v. Powell*, 154 S.W.2d 632 (Tex. 1941), *Loomis v. Gulf Oil Corp.*, 123 S.W.2d 501 (Tex.Civ.App.–Eastland 1938, writ ref'd), *Lindsay v. Texas Iron & Steel Co.*, 9 S.W. 2d 287 (Tex.Civ.App.–Texarkana 1928, writ ref'd), and *Ralph v. Magnolia Petroleum Company*, 95 S.W.2d 222 (Tex.Civ.App.–El Paso 1936, writ ref'd). Further, the inclusion of mineral development language in mineral deeds is commonplace, with Mr. Minton acknowledging that "50 percent of the time I put them in there or I find them in there" and agreeing that including them would be "perfectly consistent with that instrument being a mineral deed" (III R.R. 162).

To be anything other than a deed which conveyed a fee simple estate in and to the undivided one-half of the minerals in and under the 160 Acre Tract, the 1906 Deed would have had to include among its terms some sort of provision or condition which would cause it to terminate upon the occurrence of a specific event. This is also in accord with the provisions of TEX. PROP. CODE § 5.001:

§ 5.001. Fee Simple

(a) An estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law. Words previously necessary at common law to transfer a fee simple estate are not necessary.

(b) This section applies only to a conveyance occurring on or after February 5, 1840.

Since the 1906 Deed does not contain any such provision, condition or limitation indicating that a lesser estate than a fee simple was conveyed, it is a deed which conveyed a fee simple estate in and to one-half of the minerals in and under the 160 Acre Tract.

The court in *Crumpton v. Scott*, 250 S.W.2d 953 (Tex.Civ.App.–Ft. Worth 1952, n.r.e.) dealt with a factual situation virtually identical to that disclosed in this case. In *Crumpton*, the suit was between the descendants of the parties to the original deed, the original deed was contended to have been an executory contract between an attorney and his client, there was a claim that the attorney to whom the deed had been granted had not performed the services for which he had been retained, and the grantor of the deed had lived more than 24 years after granting the deed and the suit was filed 29 years after the deed at issue in that case (rather than the more than 30 years that all of the grantors of the 1906 Deed had lived before the first of them died and the 105 years between the granting of the 1906 Deed and the filing of this suit), but never

made any effort to file a suit to set aside the deed or to sue for breach of contract. In

pertinent part, the *Crumpton* Court stated:

> The instrument was valid on its face, meeting every statutory requirement. It was executed and delivered by the vendors and accepted and filed for record by the vendee and the original remained in the possession of the vendee throughout his lifetime. We think the trial court was correct in disregarding the jury's answer and rendering judgment non obstante that the deed was effective to pass title as of the date of its execution.
>
> Assuming that Crumpton did not perform services under the contract, we think that part of the consideration, 'in reference to our rights and interest,' placed the grantors in no different situation than if a note had been executed for part of the purchase price without retaining a vendor's lien, or if part of the consideration had been that the grantee would care for the grantor in the future. *Ransom v. Brown*, 63 Tex. 188; 14 Tex.Jur., p. 802, secs. 45, 48, 50 and 51; *Sisk v. Randon*, 123 Tex. 326, 70 S.W.2d 689. The grantor did not see fit to provide that failure on the part of Crumpton to perform should operate to cause the property to revert to the grantor. Where there is no express lien, the conveyance is an executed contract by which the title passes absolutely to the purchaser. *Burgess v. Hatton*, Tex.Civ.App., 209 S.W.2d 999, writ refused. Calvin J. Scott had the right to set aside the deed if he had legal or equitable grounds therefor, or to sue for damages for Crumpton's failure to perform if he did fail to perform. The instrument was not void on its face. The instrument being a warranty deed and not void, the plaintiff-interveners' suit is barred by limitation. *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671; *La Fleaur v. Kinard*, Tex.Civ.App., 161 S.W.2d 144, writ refused, w. m.
>
> The law favors a rule of construction requiring an interpretation under which a deed will be valid and operative in preference to one which will nullify it. 14 Tex.Jur., p. 915. The trial court correctly construed the disputed instrument to be a deed passing present title.

*Id*. at 955-956.

The fact that the 1906 Deed recites that the grantees were to continue to provide services following the execution of the deed does not, according to *Crumpton* and the authority cited therein, result in the instrument being anything less than what it purports to be on its face, which was a fee conveyance. The grantors of the 1906 Deed could have included a provision providing for reversion in the event of any specified default of the grantees of the services they were to render following the execution of the deed or could have reserved a vendor's lien to secure the grantees' performance of additional services, but did not do so.

If the trial court had followed the "four corners" rule as enunciated in *Luckel* and the other law referenced in this brief, it would have realized that the only plausible and logical reading of the 1906 Deed is that it conveyed to June C. Harris and Robt. Lindsey an undivided one-half of the minerals underlying the 160 Acre Tract, which interest is now owned by Appellants, except for the small amount of such interest acquired by the Appellees as a result of the conveyances they received from Thomas L. Husbands, Robbie V. Russell, and Triple Crown Acquisitions, LLC in 2011 (VI R.R. P.Ex. 13, 14, 15, and 41). The trial court's failure to do so resulted in an incorrect judgment.

## C.   The 1908 Release Does Not Pertain to the 1906 Deed

Just as is true with construction of the 1906 Deed, the 1908 Release has to be construed in accordance with the "four corners" doctrine and had the trial court done so, it would have come up with a judgment in favor of Appellants rather than the judgment in favor of Appellees.  The trial court instead ignored the entire wording of the 1908 Release and elected to adopt Appellees' position that the date of the instrument referenced in the 1908 Release was incorrectly transcribed as being 1907 instead of 1906.  Specifically, the trial court ignored that the 1908 Release recited that (i) it released an instrument dated in 1907 instead of 1906, (ii) the instrument being released was a "contract or lease" rather than a deed or conveyance, (iii) the grantee named in the "contract or lease" being released was "Nacogdoches Land Company, a firm composed of Robt Lindsey and June C. Harris" but the 1906 Deed contains no reference to "Nacogdoches Land Company", (iv) the purpose for which the "contract or lease" was for "the development and exploitation of said property for oil and other mineral" which is not identical to the expressed desires of the grantors in the 1906 Deed, (v) the reason for the release was because "by the terms of said contract or lease the time for said development has expired rendering null and void said lease" when no such termination clause exists in the 1906 Deed, and (v) the parties who granted the instrument being released were "R. E. Mills, Tom Mills and Sam Mills" instead

of S. A. Mills and his wife Saphronia Mills, R. E. Mills and his wife Mary Ann Mills, and Thos. Mills and his wife Z. A. Mills, who were the grantors in the 1906 Deed.

The foregoing quoted provisions from the 1908 Release obviously describe an oil and gas lease and not the 1906 Deed. An oil and gas lease conveys a fee simple determinable title in and to the mineral estate to the lessee and has an automatic reverter to the lessor of the mineral estate upon stated terms, such as expiration of the primary term or, in the event of operations or production occurring at expiration of the primary term, at such later time as such operations and production cease. The 1906 Deed was a conveyance of a fee title to an undivided one-half of the mineral estate and not a conveyance of a fee simple determinable estate. The 1906 Deed does not contain any provision, covenant, restriction, reservation, or condition which would cause its expiration and render it "null and void" due to a lack of development. The only reasonable construction, utilizing the "four corners" doctrine, of the 1908 Release is that it is what its title says it is, a "Release Lease", which released an oil and gas lease which had, according to its terms, expired and, for whatever reason, was not recorded in Nacogdoches County, Texas.

When faced with these discrepancies, Mr. Minton was unable to provide an explanation other than that he perceived there must have been some unwritten understanding of Lindsey and Harris that the 1906 Deed had a specified term upon

which it would have expired (III R.R. 130), or because the description of the instrument being released by the 1908 Release was that it contained a termination provision which was "not in the other document", *i.e.*, the 1906 Deed, it was his opinion that the grantees of the 1906 Deed, "in their minds, have some idea about what would terminate" the 1906 Deed (III R.R. 135-136). Because Mr. Minton had not even been born when the 1906 Deed was executed and had no knowledge of what had transpired, his legal opinions on the subject would probably be better described as wildly speculative and fanciful.

Since the 1906 Deed had been recorded, common practice would be to include the recording data in the 1908 Release (III R.R. 119-120). The lack of such recording data provides further support that the 1908 Release did not release the 1906 Deed but instead released an unrecorded 1907 oil and gas lease; after all, if the 1907 oil and gas lease referenced in the 1908 Release was not recorded as appears to be the case, then there would be no recording data to be included in the 1908 Release.

Based upon the express language used in the 1908 Release and following the dictates of *Luckel*, the only logical and reasonable construction is that the 1908 Release referred to an unrecorded oil and gas lease granted to Nacogdoches Land Company in 1907, exactly a year after the 1906 Deed.

Since the 1906 Deed was a conveyance of a fee interest in the mineral estate in and under the 160 Acre Tract, and if the grantees of the 1906 Deed had intended to reconvey the mineral estate which had been granted to them, the more appropriate instrument to have used would have been a deed with words of present grant and the lack of words of present conveyance and a habendum clause is indicative that the instrument was not intended to reconvey the interests granted by the 1906 Deed. *See Tate*, 793 S.W.2d at 47. Releases of oil and gas leases are typically executed and recorded to acknowledge for purposes of record title that an oil and gas lease has terminated and title has reverted to the lessor according to the lease's terms; the release of an oil and gas lease is not necessary for purposes of reconveying title because title already had reverted to the lessor upon the happening of the termination event specified in the lease.

Unrecorded instruments are also not strangers to Texas jurisprudence. TEX. PROP. CODE § 13.02 specifically deals with the validity of unrecorded instruments and provides that an unrecorded instrument is "binding upon a subsequent purchaser who does not pay a valuable consideration", such as would be the case with Appellees since they received their interests by gift. In dealing with an unrecorded instrument which had been referenced in a recorded instrument, *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) held that when an unrecorded document

is described in a recorded instrument, such constitutes notice of the unrecorded instrument. Even Mr. Minton acknowledged that when an instrument is referenced in a recorded instrument but is not itself recorded, it is reasonable to assume the instrument's existence (III R.R. 170-171) and that it is not rare, during the early 1900's for instruments not to have been recorded (III R.R. 123-124).

**B.     Appellants' Second Issue Presented for Relief Restated and Argument and Authorities in Support of Appellants' Second Issue Presented for Relief**

**1.     Appellants' Second Issue Presented for Relief Restated**

The trial court erred by admitting parol and extrinsic evidence to assist in the construction of the 1906 Deed and 1908 Release and then relying upon such evidence in entering judgment against Appellants.

**2.     Argument and Authorities in Support of Appellants' First Issue Presented for Relief**

Despite timely and proper objection (III R.R. 49-50, 95, 96, 103, 141-143, 146, 149-150), the trial court allowed parol and extraneous evidence to provide an interpretation of the 1906 Deed and 1908 Release contrary to the expressed meaning of the language contained in each of such instruments, including hearsay correspondence providing an interpretation of the 1906 Deed (VI R.R. P.Ex. 1), essentially the entirety of Robert Minton's testimony (III R.R. 89-184), and various exhibits admitted during Mr. Minton's testimony (VI R.R. P.Ex 7, 8, 16, 38, and 39).

**A.    The Parol Evidence Rule barred parol and extraneous evidence and the record does not support any exceptions to application of the Parol Evidence Rule**

Pursuant to the parol evidence rule, parol and extraneous evidence is generally inadmissible to vary or contradict the terms of an unambiguous deed or contract. *Dyer v. Cotton*, 333 S.W.3d 703, 718 (Tex. App.- Houston [1st Dist.] 2010, no pet.). Exceptions to the parol evidence rule exist when there are allegations that the deed or contract fails to reflect the parties' true intent due to fraud, accident, or mutual mistake, *Id*. at 718, or when the instrument is ambiguous. *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450-51 (Tex. 2008). There were no allegations made that fraud, accident, or mutual mistake were involved with either the 1906 Deed or 1908 Release.

In its conclusion of law numbered 1, the trial court stated that "[e]xtrinsic evidence was admissible to show that the Release dated Janary 18, 1908 was intended to Release the Contract dated July 9, 1906" (III C.R. 698). Although the trial court did not further elaborate as to how it arrived at such conclusion, the only possible basis was ambiguity, which may have been fueled by the "Summary Bench Brief" which Appellees' counsel presented to the trial court on the day of trial asserting that the parol evidence rule should not apply with regard to the 1906 Deed and 1908 Release

-30-

due to an unspecified latent ambiguity (II C.R. 476-522), despite the fact that there were no pleadings asserting ambiguity.

The determination of ambiguity of a deed or contract is a question of law. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951). An ambiguity does not exist just because the parties assert two different interpretations, but instead exists if the "contract language is susceptible to two or more reasonable interpretations", *American Manufacturers Mutual v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003), or "the application of the pertinent rules of interpretation to the face of the instrument leaves the court genuinely uncertain which one of two or more meanings is the proper meaning." *Moon Royalty, LLC v. Boldrick Partners d/b/a Statewide Minerals Co.*, 244 S.W.3d 391, 394 (Tex.App.–Eastland 2007, no pet.)  (citing Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154,157 (Tex. 1951)).  So long as the 1908 Release could be given a definite or certain meaning, then, as a matter of law, it was not ambiguous.  *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

"A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). In this situation, more than 100 years had passed from the date of the 1908 Release to the time when this suit was filed. The 1908 Release released, based upon its terms, a 1907 lease and its effect terminated when it released the instrument which it described as released. None of the people who were associated with either of such instruments lived past the 1950's and there was nobody in the courtroom who had any personal knowledge of the events associated with either of those instruments (III R.R. 54-55, 113). There was therefore nobody who could have provided testimony regarding a latent ambiguity. The only purpose Appellees had for asserting latent ambiguity in their "Summary Bench Brief" was to provide an excuse to allow Robert Minton, Appellees' legal expert, the opportunity to testify as to his legal opinion regarding the effect of the 1908 Release and 1906 Deed.

A reading of the 1908 Release does not demonstrate any ambiguity and the record is devoid of any evidence which would support a finding of latent ambiguity. The 1908 Release is quite straightforward in that it releases a "contract or lease" given on July 9, 1907 by R. E. Mills, Tom Mills and Sam Mills . . . to Nacogdoches Land Company, a firm composed of Robt Lindsey and June C. Harris" and that the reason

the contract or lease was being released was because "by the terms of said contract or lease the time for said development has expired rendering null and void said lease."

Whether the instrument described in and released by the 1908 Release was the same as the 1906 Deed, as asserted by Appellees, or an unrecorded instrument, as asserted by Appellants, was a legal question for the court and for which no oral testimony was required or should have been allowed, particularly given the passage of time and complete lack of anyone with personal knowledge. The trial court should have determined the import and meaning of the 1908 Release without admitting and then relying upon extrinsic and parol evidence; however, because it admitted parol or extrinsic evidence and then relied upon that evidence either to create an ambiguity or to give the 1908 Release a different meaning than that conveyed by its language, it erred.

**B.    The admission of legal opinion testimony was improper**

Mr. Minton's testimony should also have been excluded and the trial court erred in admitting it and relying upon it as evidence because "[i]t is well established that expert testimony that consists of legal conclusions is not admissible at trial." *Greenberg Trourig of New York, P.C. v. Moody*, 161 S.W.3d 56, 94 (Tex.App.–Houston [14th Dist.] 2005, no pet.); *see also C.P. Interests, Inc. v. California Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001). Under TEX. R. EVID. 702,

expert testimony is admissible only if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Since Mr. Minton's testimony applied only to the law applicable to the meanings and constructions to be afforded to the 1906 Deed and the 1908 Release, his testimony invaded the province of the court instead of assisting the trial court "to understand the evidence" or "to determine a fact in issue" and should not have been allowed or relied upon by the trial court.

### C. The admission of various documents was not allowed by the surrounding circumstances test

The trial court erred in admitting instruments executed between June C. Harris and Robt. Lindsey in a transaction with third parties (VI R.R. P.Ex. 7, 8, 16, 38, and 39) in order to determine the intent of the 1906 Deed. The "surrounding circumstances" test, when applied to utilizing multiple and separate documents to determine intent, is generally confined to those events and matters which are contemporaneous in time to the execution of the deed at issue and which pertain to the same transaction. In *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000), the Court stated that it is "well-established law that **instruments pertaining to the same transaction** may be read together to ascertain the parties' intent . . ." (Emphasis added.) In *Savage v. Doyle*, 153 S.W.3d 231, 234 (Tex.App.–Beaumont 2004, no pet.), the court noted that instruments executed

contemporaneously were properly considered in determining surrounding circumstances.

Secondly, "surrounding circumstances" are not to be considered when the instrument is unambiguous. As held in *Anderson v. Gilliland*, 624 S.W.2d 243, 245 (Tex.Civ.App.–Dallas 1981, writ ref'd n.r.e.):

> Gilliland contends, and the dissent agrees, that we should look to extrinsic evidence of the circumstances surrounding the execution of the deed, such as testimony of the widow and the contents of the grantor's will, to determine the intention of the grantor in executing the unambiguous quitclaim deed. **This we cannot do. It is without question that the intent of an unambiguous deed must be determined from the language used.**
>
> Where the terms of a deed are clear and unambiguous, parol evidence is inadmissible to vary or contravene its terms or to show the construction placed thereon by the parties at the time or subsequent to its execution. *Henry v. Phillips*, 105 Tex. 459, 151 S.W. 533, 538 (1912); *Soell v. Haddon*, 85 Tex. 182, 19 S.W. 1087 (1892). Thus, we hold that the testimony of the widow, the contents of the grantor's will, and the closeness of the execution of the deed and the will, are all inadmissible on the question of the grantor's intent in executing the quitclaim deed.

(Emphasis added.)

The instruments involving the May 23, 1906 conveyance from J. D. Stoker *et al* to Robert Lindsey and June C. Harris (VI R.R. P.Ex. 7) and the subsequent conveyance on July 27, 1906 by all of the grantors and grantees of the May 23, 1906 conveyance to W. D. Sharpe (VI R.R. P.Ex. 8) were admitted with regard to the construction and effect of the 1906 Deed but such instruments do not pertain to the

same transaction as represented by the 1906 Deed or 1908 Release. Although Robert Lindsey and June C. Harris were parties to these transactions, the grantors of the 1906 Deed were not. Their admission therefore does not satisfy various requirements of the "surrounding circumstances" test.

C.  **Appellants' Third Issue Presented for Relief Restated and Argument and Authorities in Support of Appellants' Third Issue Presented for Relief**

    1.  **Appellants' Third Issue Presented for Relief Restated**

The trial court's findings of fact numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, and 16, are really conclusions of law and are to be treated as such, but even if they were findings of fact, they either have no support in the evidence or are against the preponderance of the evidence, and the remaining findings numbered 3, 14, 17 and 18 are irrelevant and immaterial.

    2.  **Argument and Authorities in Support of Appellants' Third Issue Presented for Relief**

The general rules applicable to findings of fact is that they are to be accorded "the same force and dignity as a jury verdict upon special issues" and "[i]f they are supported by some competent evidence they will not be disturbed upon appeal unless they are so against the overwhelming weight of the evidence as to be clearly and manifestly wrong." *Houston Natural Gas Corp. v. Pearce*, 311 S.W.2d 899, 903 (Tex.Civ.App. — Houston 1958, writ ref'd n.r.e.). The general rule regarding

"findings of fact" does not apply, however, when a trial court's "findings of fact" are really conclusions of law; when such is the case, the "findings of fact" are not binding upon an appellate court but will instead be treated and reviewed as legal conclusions. *See Mortgage & Trust, Inc. v. Bonner & Co., Inc.*, 572 S.W.2d 344, 349 (Tex. Civ. App.-Corpus Christi 1978, writ ref'd n.r.e.); *Cities of Allen v. R.R. Comm'n of Tex.*, 309 S.W.3d 563, 570 (Tex. App.-Austin 2010, pet. filed); *City of Houston v. Harris County Outdoor Adver. Ass'n,* 732 S.W.2d 42, 47 (Tex. App.-Houston [14th Dist.] 1987, no writ).

In this case, the trial court's findings of fact numbered 1, 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 15, and 16 (III C.R. 695-699) appear to be predicated on the trial court's belief that the 1906 Deed was either something other than a fee conveyance or was released by the 1908 Release and are legal conclusions or embody legal conclusions to such an extent that the legal conclusion is inextricably intertwined with the factual finding.

To the extent that any of such "findings of fact" could be considered as factual findings rather than conclusions of law, then they are either not supported by the evidence or are against the preponderance of the evidence and the legal conclusions made by the trial court in connection with such findings of fact would be in error. Claims of no evidence or factual insufficiency require that the appellate court review

the trial evidence as part of its determination whether the trial court's fact findings and resultant legal conclusions are supported by the evidence. *Houston Natural Gas Corp.*, 311 S.W.2d at 903.

**Findings # 1 and 2**

In its finding of facts numbered 1 and 2, the trial court found that "the Release dated January 18, 1908 was intended to release the Contract dated July 9, 1906" and "the Release dated January 18, 1908 refers to a contract dated July 9, 1907 when, in fact, the Contract was dated July 9, 1906, but in all other respects corresponds with the July 9, 1906 Contract and there is no other instrument which would accord with the language used in the Release in referring to the prior instrument" (III C.R. 695). These "findings" merely state legal conclusions regarding the 1908 Release.

There was nothing in the testimony of Donald Mills which would support these "findings". As he stated, neither he nor anyone else in the courtroom had either been born or had any personal knowledge of anything that had transpired in 1906 in relation to the 1906 Deed (III R.R. 55) and the last of the parties to the 1906 Deed died in the 1950's (III R.R. 54-55).

The only other evidence heard by and which the trial court could have relied upon in making these findings of fact was the opinion evidence of Roy Minton, an attorney. Mr. Minton had not been born when either the 1906 Deed or 1908 Release

had been executed since he was not even 78 years of age at the time of trial (III R.R. 113) and admitted that his testimony regarding the 1906 Deed and 1908 Release constituted his legal opinion (III R.R. 126). As previously noted, it is well established that testimony which consists of legal conclusions is not admissible and therefore cannot constitute evidence. *Greenberg Trourig of New York, P.C.*, 161 S.W.3d at 94.

Mr. Minton's testimony was also contradictory and he negated any possibility of his opinion being considered as supporting Appellees' position by a preponderance of the evidence. In his testimony, he acknowledged that there were more differences between the 1906 Deed and the instrument described as being released in the 1908 Release than just the date. He acknowledged that the names of three of the parties who signed the 1906 Deed were omitted from the instrument described in the 1908 Release (III R.R. 104, 105), S. A. Mills and Thos. Mills were named in the 1906 Deed but appear as Sam Mills and Tom Mills in the instrument described in the 1908 Release (III R.R. 104), the 1906 Deed did not contain any term upon which it expired although the instrument being released by the 1908 Release was described in the 1908 Release as a "contract or lease" for "the development and exploitation of said property for oil and other mineral", and that it was being released because "by the terms of said contract or lease the time for said development has expired rendering null and void said lease" (III R.R. 107, 117-118), and "Nacogdoches Land Company" which was

recited to be a party to the instrument described in the 1908 Release was not a party to the 1906 Deed (III R.R. 118, 121). Mr. Minton also testified that an opinion regarding the effect of the 1906 Deed and 1908 Release contrary to his would be just as reasonable as his opinion (III R.R. 126-127). Finally, a large part of Mr. Minton's opinion regarding the issue of the 1908 Release operating as a release of the 1906 Deed was that he opined that the 1906 Deed was not a fee conveyance but a contract or lease (III R.R. 108-109); however, in an virtually identical document also involving Robert Lindsey and June C. Harris (VI R.R. P.Ex. 7), he stated that the virtually identical document was a fee mineral conveyance (III R.R. 158-159).

These "findings" also fail to recognize that the reference in the 1908 Release to the unrecorded instrument which the 1908 Release intended to release was binding upon Appellees by the provisions of TEX. PROP. CODE §13.001 which deals with the validity of unrecorded instruments and states, in pertinent part, that "[t]he unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument." Appellees Donald Roger Mills and Beverly Mills pool were donees who did not pay a valuable consideration.

**Finding #3**

This finding, relating to a well drilled in 1907, is immaterial and irrelevant to the trial court's resolution of the issues of legal interpretation of the 1906 Deed and 1908 Release.

**Findings #4 and 5**

In its findings of fact numbered 4 and 5, the trial court states that the 1906 Deed contained "executory promises" and that there was a "reasonable time" for performance of those "executory promises" (III C.R. 695-696). These are legal conclusions regarding the meaning and import of the terms and provisions of the 1906 Deed and the importation of some legal "reasonable time" component into the terms and provisions of the 1906 Deed. As previously discussed in this Brief, the 1906 Deed does not constitute either a lease, hybrid instrument, or an executory contract but is a fee conveyance of an undivided one-half of the minerals in the 160 Acre Tract so the legal characterization contained in these "findings" is incorrect.

Appellees also did not place into evidence any facts regarding any lack of performance by the Grantees of the 1906 Deed of the consideration for such Deed. To the contrary and because over 100 years had elapsed between the execution ov the 1906 Deed and filing of this suit, Appellees' witness Donald Mills testified that as far as he knew, the grantees of the 1906 Deed had complied with all of the terms and

provisions contained in the 1906 Deed (III R.R. 55) and Appellees' other witness,

Robert Minton, testified that nobody in the courtroom knew what the grantees of the

1906 Deed did following execution of the 1906 Deed (III R.R. 183). Appellants,

however, did introduce evidence of consideration being performed, *i.e.*, title curative

work apparently done by the grantees of the 1906 Deed for one or more of the grantors

of the 1906 Deed (IV R.R. 48-52, VI RR. D.Ex. 45-50) and the 1906 Deed's grantees'

involvement in obtaining the drilling of a well in 1907 located about 1 to 1 ½ miles

south of the 160 Acre Tract (IV R.R. 14-21, VI R.R. D.Ex 54). The 1908 Release, by

referring to a 1907 oil and gas lease taken from the grantors of the 1906 Deed,

provides additional evidence that the grantees performed additional consideration

following the execution of the 1906 Deed. Also, the 1906 Deed expressly confirms

that some services had been rendered as of the time of execution of the 1906 Deed.

Even if there had been some failure on the part of Lindsey and Harris to perform

all of the consideration which they were to provide for the one-half mineral interest

conveyed to them by the 1906 Deed, that failure, in the absence of fraud, would not

afford any cause of action to set aside a fully executed and delivered deed. As stated

in *Munguia v. Paiz*, 404 S.W.3d 47 (Tex.Civ.App.– San Antonio 1966, no writ):

> Even if it be assumed that parol evidence was admissible to show that the
> deed did not recite the full consideration for the conveyance, and
> assuming that there has been a total or partial failure of consideration,
> appellants' pleadings and counter-affidavits presented no defense to

-42-

appellee's suit. The applicable rule is tersely stated in *Stuard v. Vick*, Tex.Civ.App., 9 S.W.2d 494, 496, wr. dism., as follows: 'It is well settled by the decisions in our state that mere failure by a grantee to perform a promise, which formed the whole or a part of the consideration inducing an executed conveyance of real estate, gives rise to no right of rescission in the grantor.' Stated differently, a deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration, and will, despite such failure, operate to convey title. 6 Thompson, Real Property (1962 Replacement), § 3124; 26 C.J.S. Deeds § 21, p. 618. The authorities on this question are exhaustively discussed in *Tripplehorn v. Ladd-Hannon Oil Corporation*, Tex.Civ.App., 8 S.W.2d 217, wr. dism.

*Id.* at 47-48.

### Findings #6, 7, 8, 9, and 10

The trial court found that Appellees or their predecessors in title had not: "made an express renunciation of the mineral rights described in the 1906 Contract which was released by the 1908 Release"(Finding 6), "mislead Defendants or their predecessors in title to their prejudice into an honest belief that a waiver of their mineral estate was intended or assented to" (Finding 7), "adopted or confirmed any prior act which would entitle Defendants or their predecessors in title to the mineral estate described in the 1906 Contract and released by the 1908 Release" (Finding 8), "misrepresented to Defendants or their predecessors in title that Defendants owned the mineral estate described in the 1906 Contract after the signing and delivery of the 1908 Release (Finding 9), and "relied upon any misrepresentation by Plaintiffs and their predecessors in title to their detriment" (III C.R. 696-697). Once again, these

are legal conclusions which also incorporate the legal conclusion that the 1906 Deed

was not a conveyance instrument and had been released by the 1908 Release.

As previously stated, D. W. Mills and his wife Laura Mills, Appellees'

predecessors in title had executed the 1967 Deed of Trust and recognized and

explicitly stated therein that the 1906 Deed was a fee conveyance of an undivided one-

half mineral interest in the 160 Acre Tract. This recital is binding upon the Appellees

pursuant to the doctrine of estoppel by deed which was addressed in *Teal Trading v.*

*Champee Springs Ranches*, 432 S.W.3d 381 (Tex.App.–San Antonio 2014, pet.

denied):

> The doctrine of estoppel by deed precludes parties to a deed from denying the truth of any material fact asserted in the deed. *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 56 (Tex.App.–Fort Worth 2011, pet. denied); *Angell v. Bailey*, 225 S.W.3d 834, 842 (Tex.App.–El Paso 2007, no pet.); *see Greene v. White*, 137 Tex. 361, 153 S.W.2d 575, 583-84 (1941) ("It is held that the recital of one deed in another binds the parties to the deed containing the recital, and those who claim under them, and may take the place of a deed and thus form a muniment of title.")- **Estoppel by deed binds, not only the parties to the deed, but also their successors-in-interest.** *XTO Energy*, 357 S.W.3d at 55; *Angell*, 225 S.W.3d at 841. **Estoppel by deed may arise from the recitals, reservations, and exceptions within a deed.** *XTO Energy*, 357 S.W.3d at 55; *Angell*, 225 S.W.3d at 841; *see, e.g., Moore v. Energy States, Inc.*, 71 S.W.3d 796, 800 (Tex.App.–Eastland 2002, pet. denied)

*Id.* at 388 (emphasis added).

*See also Mars v. Morris*, 106 S.W. 430, 434 (Tex. Civ. App. 1907) which held that

donees of a gift deed are bound by the representations made by their parents which

-44-

would have operated as an estoppel against their parents, and *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) which stated "[i]t is well settled that a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims."

Additionally, this cause of action was not filed until more than 105 years after the Appellees' predecessors in title had executed the 1906 Deed. The failure on the part of Appellees and their predecessors in title to assert any claim against Appellants and their predecessors in title for that entire period of time would constitute waiver and estoppel and Appellants' pleaded limitations defense (II C.R. 453-455) was a valid defense to any claims asserted after such a lengthy period of time (*Crumpton*, 250 S.W.2d at 955-956).

### **Findings #11, 12, and 13**

The "findings" numbered 11, 12, and 13 (III C.R. 697) constitute legal conclusions as to when Appellees' cause of action accrued and their effect on Appellants' defenses of limitations and laches (II C.R. 453-455). They also ignore Texas law on the subject of constructive notice as to recorded instruments.

TEX. PROP. CODE § 11.07 provides that "[a] reference in an instrument to the volume and page number, film code number, or county clerk file number of the "real

property records" (or other words of similar import) for a particular county is equivalent to a reference to the deed records, deed of trust records, or other specific records, for the purpose of providing effective notice to all persons of the existence of the referenced instrument." TEX. PROP. CODE § 13.02 provides, in pertinent part, that "[a]n instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument . . .."

*Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984) (per curiam) recognized two rules relating to the acquisition of real property, with the first rule being that a party acquiring property is charged "with knowledge of the provisions and contents of recorded instruments" and the second rule that the acquiring party is "also charged with notice of the terms of deeds which form an essential link in their chain of ownership." *See also Peters v. Clements*, 46 Tex. 114, 123 (1876) which held that "subsequent purchasers are bound by the recitals in the deeds through which they claim." As stated in *2327 Manana LLC v. Summit*, 05-09-00107-CV (Tex.App.-Dallas 2010, pet. denied) (mem. op.):

> The second rule recognized in *Cooksey* applies regardless of whether the prior deeds were recorded, and regardless of whether the purchaser read the prior deeds or had any actual knowledge of their contents. See generally *City of Dallas v. Rutledge*, 258 S.W. 534, 539 (Tex.Civ.App.-Dallas 1924, no writ) ("The law of notice is that a purchaser of land must take notice of all instruments recorded or unrecorded in his chain of title or affecting title, and is bound by all recitals therein, although in fact ignorant of the contents."); *Matthews v.*

*Rains County*, 206 S.W.2d 852, 854 (Tex.Civ.App.-Amarillo 1947, writ ref'd n.r.e.) ("[The purchaser] is bound by every matter contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims . . . even though he had never read these instruments or had any actual knowledge of their contents, and this would be true regardless of whether the instruments were recorded.").

*See also Noble Mortg. & Invs., LLC v. D&M Vision Invs., LLC*, 340 S.W.3d 65, 74 (Tex. App. - Houston [1st Dist.] 2011, no pet.) which held that "[r]ecorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007)."

Therefore, the date when Appellees actually discovered that the 1906 Deed had been granted by their ancestors to Lindsey and Harris is irrelevant as they were charged with notice from the date they first acquired title to their interest in the 160 Acre Tract and limitations ran not from the date when Appellees may have first seen the 1906 Deed or been advised of its existence but, instead, starting running either on the date of execution of the 1906 Deed or shortly thereafter. *See Crumpton, supra*.

**Finding #14**

This finding is irrelevant to the trial court's determination of the legal interpretation to be afforded the 1906 Deed and the 1908 Release. The fact that Appellees brought suit in 2011 and "were thereafter diligent in the issue of issuance and service of citation" (III C.R. 697) is also irrelevant to the issue of limitations

because the applicable limitations bar to Appellees' suit had been in place for about a century before Appellees filed their suit.

**Finding # 15**

This "finding" contains the legal conclusion that the 1908 Release actually operated as a reconveyance of the interests conveyed by the 1906 Deed. As previously stated, the trial court's construction of the 1908 Release was in error. Since the 1908 Release did not, as a matter of law, operate to release or reconvey the mineral interests conveyed by the 1906 Deed, this "finding" is incorrect. The title or color of title owned by Appellants and their predecessors in title is based upon the 1906 Deed and there was no evidence to the contrary.

**Findings # 16, 17, and 18**

These "findings" relate to adverse possession. Finding #16 is based upon the legal conclusion that the 1908 Release accomplished a release or reconveyance of the interests conveyed by the 1906 Deed or that the 1906 Deed was not a valid fee conveyance. All of these "findings" are also irrelevant, immaterial, and inapplicable in that they apply a limitations standard which does not apply as to severed mineral interests.

Appellants' title is based upon the validity of the 1906 Deed as a fee mineral conveyance and the 1908 Release not applying to the 1906 Deed or the interests

conveyed by the 1906 Deed. The 1906 Deed established a severed mineral interest in Robert Lindsey and June C. Harris and their successors in interest.

To gain an adverse possession/limitations title to severed mineral interests, actual possession of the minerals is required, which means drilling and production. *Natural Gas Pipeline Co. v. Pool*, 124 S.W.3d 188, 192-193 (Tex. 2003). None of these findings pertain to the issue of whether there was actual production obtained from the 160 Acre Tract which would have established an adverse possession/limitations title claim to defeat the undivided one-half mineral interest which was conveyed by the 1906 Deed and there is no legal requirement that Appellants, as record owners of the vast majority of the one-half mineral interest conveyed by the 1906 Deed, need to establish an adverse possession/limitations title to the interest conveyed to their predecessors in title.

**D.      Appellants' Fourth Issue Presented For Relief**

The trial court's final judgment was rendered based on an erroneous theory of law and the trial court's conclusions of law, including those incorrectly labeled as findings of fact, do not correctly follow applicable law.

**2.      Argument and Authorities in Support of Appellants' Third Issue Presented for Relief**

The standard of review for challenges to a trial court's conclusions of law *is de novo*. *In re Moers*, 104 S.W.3d 609, 611 (Tex.App.-Houston [1st Dist.] 2003, no

pet.). A trial court's legal conclusions are subject to review to determine whether, based upon the facts, they are correct. *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex.App.-Houston [1st Dist.] 2007, no pet.).

Based upon the argument and authorities stated in the foregoing Issues Presented for Relief, the trial court's final judgment was based upon an erroneous legal interpretation of the 1906 Deed and 1908 Release instead of any conflicting and relevant testimony. There was no legal basis for the admission of extrinsic and parol evidence to aid the court in its legal construction as to whether the 1908 Release "was intended to Release" the 1906 Deed. The conclusion that the 1908 Release released the 1906 Deed is legally incorrect. In the absence of a specific provision in the 1906 dictating when the grantees were to have performed the services which they were to perform following execution and delivery of the 1906 deed, the conclusion that a reasonable time period would be implied into the 1906 Deed for the satisfaction of such additional consideration is erroneous. The conclusion that Appellees' suit was not time barred is also erroneous and is based upon the erroneous legal interpretation that the 1906 Deed had either been released or had somehow expired over a century ago. The conclusion that Appellants had not proven any affirmative defense by the preponderance of the evidence is also erroneous, particularly considering that the 1967 Deed of Trust, which constituted the basis for one of Appellants' affirmative defenses,

was a recorded instrument executed by Appellees' immediate predecessor in title and was in Appellees' chain of title to the 160 Acre Tract, and with regard to Appellants' limitations defense, the evidence was uncontroverted that more than a century had elapsed since the execution of the 1906 Deed before this suit was filed and that this suit represented the first time a claim or suit had been filed by Appellees or their predecessors in title against Appellants or their predecessors in title in relation to the 1906 Deed and its validity. The conclusions that Appellees are entitled to the one-half mineral interest conveyed by the 1906 Deed and that they are entitled to the suspensed royalties paid into the registry are in error and are based upon the prior erroneous conclusions that the 1906 Deed either was released by the 1908 Release or that the 1908 Deed somehow was released by operation of law due to some failure to provide consideration within a reasonable time.

## IV.  CONCLUSION AND PRAYER

Based upon the foregoing, it is apparent that the trial court's final judgment in this case is incorrect and in error.  The trial court erred in its construction of the 1906 Deed and in failing to construe the 1906 Deed as a fee conveyance which granted an undivided one-half mineral interest to June C. Harris and Robt. Lindsey, the grantees of the 1906 Deed.  The trial court also erred in its construction of the 1908 Release and in determining that the 1908 Release released to the grantors of the 1906 Deed all

of the interest conveyed by the 1906 Deed. The trial court erred in entering a judgment in favor of Appellees and in failing to enter judgment in favor of Appellants.

WHEREFORE, PREMISES CONSIDERED, Appellants pray that this Court either: (I) reverse the final judgment of the trial court and render the judgment that the trial court should have rendered in favor of Appellants, or (ii) reverse the trial court's final judgment and remand this case to the trial court for further proceedings.

Respectfully Submitted,

FABIO & MERRILL

By:_____
     Richard L. Merrill
     TBA# 13963500
Twelve Greenway Plaza, Suite 101
Houston, Texas 77046-1208
Tel. No.:    (713) 961-0408
Fax No.:    (713) 961-2934
E-mail:    rmerrill@fabiomerrill.com
ATTORNEY FOR APPELLANTS -
PARRISH TRUST PARTIES

BOWEN FIRM

By: /s/ *Berry Dunbar Bowen*
      Berry Dunbar Bowen
      SBOT# 02721050
3014 Brazos Street
Houston, TX 77006
Tel. No.:    (713) 521-3525
Fax No.:    (713) 521-3575
E-mail:    berrybowen@comcast.net
ATTORNEY FOR APPELLANTS -
LUMMIS PARTIES

## CERTIFICATE OF SERVICE

This will certify that on this 16th day of November, 2015, a true copy of the

foregoing, together with the attached Appendices, has been served in a manner

authorized by the Texas Rules of Appellate Procedure upon the following counsel and

parties:

William D. Guidry
Jeffrey Britton Bates
Guidry, Bates & Hoyt Attorney's, L.L.P.
118 East Hospital St. Ste. 100
P.O. Box 631178
Nacogdoches, Texas 75963
Fax: (936) 560-5996
E-mail: billguidry@gbhattorneys.com

Richard L. Merrill

-53-

# CERTIFICATE OF COMPLIANCE

This will certify that, after excluding the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix, the Brief of Appellants contains 14,967 words according to the word count of the computer program used to prepare the document.

_Richard L. Merrill_
Richard L. Merrill

C.A. NO. 12-15-00170-CV

IN THE
COURT OF APPEALS FOR THE STATE OF TEXAS
TWELFTH SUPREME JUDICIAL DISTRICT
TYLER, TEXAS

LINDA ANN PARRISH RICHARDSON and GARY BRUCE
RICHARDSON, CO-TRUSTEES OF THE M. C. PARRISH, JR.
TESTAMENTARY TRUST *et al*,
APPELLANTS

VS.

DONALD ROGER MILLS *et al*,

APPELLEES

ON APPEAL FROM THE 145ᵀᴴ JUDICIAL DISTRICT COURT
OF NACOGDOCHES COUNTY, TEXAS

APPENDIX - NECESSARY CONTENTS

TO

BRIEF FOR APPELLANTS

# TABLE OF CONTENTS

**APPENDIX 1**    Final Judgment dated March 30, 2015

**APPENDIX 2**    Findings of Fact and Conclusions of Law dated April 20, 2015

**APPENDIX 3**    Copy of 1906 Deed (in printed form)

**APPENDIX 4**    Copy of 1908 Release

**APPENDIX 5**    Copy of 1967 Deed of Trust

# APPENDIX 1

FILED

8:15 A.M.

APR 2 2015

DISTRICT CLERK
JESSICA HILL
NACOGDOCHES COUNTY, TX

NO. C1127605

| | | |
|---|---|---|
| **DONALD ROGER MILLS ET AL** | § | **IN DISTRICT COURT OF** |
| | § | |
| **VS.** | § | **NACOGDOCHES COUNTY, TEXAS** |
| | § | |
| **EOG RESOURCES, INC. ET AL** | § | **145TH JUDICIAL DISTRICT** |

## FINAL JUDGMENT

On March 3, 2015, the following Plaintiffs appeared in person and through their attorneys of record and announced ready for trial: (1) DONALD ROGER MILLS; (2) RHONDA MILLS; and (3) BEVERLY MILLS POOL and the following Defendants appeared in person and/or by and through their respective attorneys of record and announced ready for trial: (1) JUDY CLEVELAND HUPPERT; (2) JAMES COOKE WILSON, III, INDIVIDUALLY, AS CO-INDEPENDENT EXECUTOR OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON, PROBATED IN CAUSE NO. 379272, IN PROBATE COURT NO. 2 OF HARRIS COUNTY, TEXAS; (3) MARGARET WILSON RECKLING, INDIVIDUALLY, AS CO-INDEPENDENT EXECUTRIX OF THE ESTATE OF BETTY VIRGINIA KILEY WILSON, DECEASED, AND AS TRUSTEE OF ALL TRUSTS CREATED UNDER THE WILL OF BETTY VIRGINIA KILEY WILSON, PROBATED IN CAUSE NO. 379272, IN PROBATE COURT NO. 2 OF HARRIS COUNTY, TEXAS; (4) RANSOM CLARK LUMMIS; (5) JANIE GRANGER SPICER; (6) THOMAS S. DAVISON; (7) FREDERICK R. LUMMIS II; (8) PALMER BRADLEY LUMMIS; (9) LINDA ANN PARRISH RICHARDSON, AS CO-TRUSTEE OF M.C. PARRISH, JR. TESTAMENTARY TRUST; (10) GRAY BRUCE RICHARDSON, AS CO-TRUSTEE OF M.C. PARRISH, JR. TESTAMENTARY TRUST; (11) ROBERT L. BRADLEY, JR.; (12) WILLIAM R. LUMMIS, JR.; (13) CLYTIE HARRIS THOMAS PHELPS; (14) MARY GAIL THOMAS CAMPBELL; (15) JOHN K. HARDY; and (16) JOHN TURNER NEVITT (hereinafter

referred to as "the Heirs, Devisees and/or Assigns of Robt. Lindsey or June C. Harris") and the following Defendants were dismissed from this lawsuit, subject to the orders of this Court stated in Agreed Order on Petition for Interpleader signed by this Court on March 3, 2015: (1) TANOS EXPLORATION II, LLC; (2) TANOS ENERGY HOLDINGS, LLC; (3) PETROHAWK PROPERTIES, LP; (4) EOG RESOURCES, INC.; (5) ADAMS RESOURCES EXPLORATION CORPORATION; (6) SUSAN ADAMS SMITH, AS INDEPENDENT CO-EXECUTOR OF THE ESTATE OF KENNETH S. ADAMS, JR.; (7) AMY ADAMS STRUNK, AS INDEPENDENT CO-EXECUTOR OF THE ESTATE OF KENNETH S. ADAMS, JR.; and (8) KENNETH S. ADAMS, IV, AS INDEPENDENT CO-EXECUTOR OF THE ESTATE OF KENNETH S. ADAMS, JR. (hereinafter referred to as "Interpleading Defendants") and all matters in controversy were submitted to the Court, matters of fact as well as matters of law, without the intervention of a jury. The Court heard the evidence and argument of counsel and is of the opinion that judgment should be rendered for Plaintiffs, DONALD ROGER MILLS and wife, RHONDA MILLS and BEVERLY MILLS POOL.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiffs' title is hereby quieted as to that certain undivided one-half interest in the oil, gas and other minerals in, on and under that certain 160 acres, being the entire 160-acre M. J. Mills preemption, described in that certain contract between S. A. Mills et al and Robt. Lindsey and June C. Harris, dated July 9, 1906, recorded in Volume 64, Page 64, Deed Records of Nacogdoches County, Texas, and any right or claim held or claimed by Nacogdoches Land Co., Robt. Lindsey, June C. Harris and/or the Heirs, Devisees and/or Assigns of Robt. Lindsey or June C. Harris by virtue of said contract recorded in Volume 64, Page 64, Deed Records of Nacogdoches County, Texas is hereby declared to be released, relinquished, extinguished and of no further force or effect, as of January 18, 1908.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following Oil, Gas and Mineral Leases (#1-15) and Quitclaim Deed (#16) are hereby removed as being clouds upon the title of Plaintiffs insofar as said leases and quitclaim relate to the 160-acre M. J. Mills Survey, Nacogdoches County, Texas:

1.     Memorandum of Oil, Gas and Mineral Lease from Thomas L. Husbands to Cinco Land & Exploration, Inc. dated effective January 13, 2006, and recorded Volume 2384, Page 40 Official Public Records Nacogdoches County, Texas.

2.     Oil, Gas and Mineral Lease from Judy Cleveland Huppert to Cinco Land & Exploration, Inc. dated December 29, 2005 and recorded Volume 2375, Page 69 Official Public Records Nacogdoches County, Texas.

3.     Oil, Gas and Mineral Lease from Betty Kiley Wilson to Cinco Land & Exploration, Inc. dated January 4, 2006 and recorded Volume 2365, Page 54 Official Public Records Nacogdoches County, Texas.

4.     Memorandum of Oil, Gas and Mineral Lease from Ransom Clark Lummis to Cinco Land & Exploration, Inc. dated effective January 13, 2006 and recorded Volume 2375, Page 38 Official Public Records Nacogdoches County, Texas.

5.     Oil, Gas and Mineral Lease from Janie Granger Spicer to Cinco Land & Exploration, Inc. dated January 17, 2006 and recorded Volume 2375, Page 57 Official Public Records Nacogdoches County, Texas.

6.     Oil, Gas and Mineral Lease from Thomas S. Davison to Cinco Land & Exploration, Inc. dated January 17, 2006 and recorded Volume 2375, Page 60 Official Public Records Nacogdoches County, Texas.

7.     Memorandum of Oil, Gas and Mineral Lease from Frederick R. Lummis II to Cinco Land & Exploration, Inc. dated effective January 13, 2003 and recorded Volume 2375, Page 73 Official Public Records Nacogdoches County, Texas.

8.     Memorandum of Oil, Gas and Mineral Lease from Palmer Bradley Lummis to Cinco Land & Exploration, Inc. dated effective January 13, 2006, and recorded in Volume 2381, Page 38 Official Public Records Nacogdoches County, Texas.

9.     Memorandum of Oil, Gas and Mineral Lease from Linda Ann Parrish Richardson and Gary Bruce Richardson, Co-Trustees of the M.C. Parrish, Jr. Testamentary Trust, dated effective January 27, 2006 and recorded Volume 2381, Page 51 Official Public Records Nacogdoches County, Texas.

10.     Memorandum of Oil, Gas and Mineral Lease from Robert L. Bradley, Jr. to Cinco Land & Exploration, Inc. dated effective January 13, 2006 and recorded in Volume 2384, Page 38 Official Public Records Nacogdoches County, Texas.

11.     Memorandum of Oil, Gas and Mineral Lease from William R. Lummis, Jr. to Cinco Land & Exploration, Inc. dated effective January 13, 2006 and recorded Volume 2414, Page 239 Official Public Records Nacogdoches County, Texas.

12.     Memorandum of Oil, Gas and Mineral Lease from Clytie Harris Thomas Phelps and Mary Gail Thomas Campbell to Cinco Land & Exploration, Inc. dated effective May 8, 2006 and recorded Volume 2443, Page 266 Official Public Records Nacogdoches County, Texas.

13.     Memorandum of Oil, Gas and Mineral Lease from John K. Hardy to Cinco Land & Exploration, Inc. dated effective January 13, 2006 and recorded Volume 2377, Page 117 Official Public Records Nacogdoches County, Texas.

14.     Memorandum of Oil, Gas and Mineral Lease from Charles E. Hardy to Cinco Land & Exploration, Inc. dated effective January 13, 2006 and recorded Volume 2375, Page 75 Official Public Records Nacogdoches County, Texas.

15.     Oil, Gas and Mineral Lease from John Turner Nevitt, Attorney-in-fact for Margaret Stuart Smith, to Cinco Land & Exploration, Inc., dated January 5, 2006 and recorded Volume 2365, Page 51 Official Public Records Nacogdoches County, Texas.

16.     Quitclaim Deed from Margaret Stuart Smith, by and through her Attorney-in-Fact, John Turner Nevitt, to John Turner Nevitt dated August 20, 2006 and recorded Volume 2500, Page 33 Official Public Records Nacogdoches County, Texas.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that, upon this Judgment becoming final, all royalties and other amounts which have been or may hereafter be tendered into the registry of the Court pursuant to the Petition for Interpleader filed herein by Tanos Exploration II, LLC, Tanos Energy Holdings, LLC, and Petrohawk Properties, LLC and in accordance with the Agreed Order on Petition for Interpleader and Order of Dismissal signed on March 3, 2015, including, but not limited to, $23,000.00 deposited in November, 2014 and $2,401.13 deposited in March, 2015, together with all accrued interest thereon, shall be withdrawn by the Nacogdoches County District Clerk and remitted by the Nacogdoches County District Clerk to the Plaintiffs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendants, the Heirs, Devisees and/or Assigns of Robt. Lindsey or June C. Harris, have and recover nothing of Plaintiffs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs have and recover judgment against Defendants, the Heirs, Devisees and/or Assigns of Robt. Lindsey or June C. Harris, for Plaintiffs' taxable court costs incurred for which execution shall issue if the same are not timely paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any relief requested by any party not specifically herein granted is hereby DENIED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this is a final and appealable judgment disposing of all claims made by all parties herein.

SIGNED March _3 2_, 2015

Guy Griffin, Judge
145th Judicial District Court
Nacogdoches County, Texas
Sitting by Assignment

# APPENDIX 2

FILED
4:10 P.M.

APR 24 2015

DISTRICT CLERK
NACOGDOCHES COUNTY, TX

NO. C1127605

| | | |
|---|---|---|
| DONALD ROGER MILLS ET AL | § | IN DISTRICT COURT OF |
| | § | |
| VS. | § | NACOGDOCHES COUNTY, TEXAS |
| | § | |
| EOG RESOURCES, INC. ET AL | § | 145TH JUDICIAL DISTRICT |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In response to the request of Defendants in this cause, I make and file the following as my findings of fact and conclusions of law.

Findings of Fact

1. By the preponderance of the credible evidence, the Release dated January 18, 1908 was intended to release the Contract dated July 9, 1906.

2. By the preponderance of the credible evidence, the Release dated January 18, 1908 refers to a contract dated July 9, 1907 when, in fact, the Contract was dated July 9, 1906, but in all other respects corresponds with the July 9, 1906 Contract and there is no other instrument which would accord with the language used in the Release in referring to the prior instrument.

3. By the preponderance of the credible evidence, on or before January 18, 1908, the prospect of development and operation of the property described in the July 9, 1906 contract for oil, gas or other minerals or selling such property was condemned by the drilling of a dry hole (derrick blew over) on land in the area.

4. By the preponderance of the credible evidence, the executory promises made by Lindsey and Harris in the Contract dated July 9, 1906 were not performed within a reasonable time.

5. Defendants failed to prove by the preponderance of the credible evidence that the executory promises made by Lindsey and Harris in the Contract dated July 9, 1906 were performed within a reasonable time. (Failure of performance)

6. Defendants failed to prove by the preponderance of the credible evidence that Plaintiffs or their predecessors in title made an express renunciation of the mineral rights described in the 1906 Contract, which was released by the 1908 Release. (No Waiver Defense)

7. Defendants failed to prove by the preponderance of the credible evidence that Plaintiffs or their predecessors in title mislead Defendants or their predecessors in title to their prejudice into an honest belief that a waiver of their mineral estate was intended or assented to Defendants or their predecessors in title. (No Waiver Defense)

8. Defendants failed to prove by the preponderance of the credible evidence that Plaintiffs or their predecessors in title, with knowledge of all material facts, adopted or confirmed any prior act which would entitle Defendants or their predecessors in title to the mineral estate described in the 1906 Contract and released by the 1908 Release. (No Ratification Defense)

9. Defendants failed to prove by the preponderance of the credible evidence that Plaintiffs or their predecessors in title misrepresented to Defendants or their predecessors in title that Defendants or their predecessors in title owned the mineral estate described in the 1906 Contract after the signing and delivery of the 1908 Release. (No Estoppel Defense)

10. By the preponderance of the credible evidence, Defendants failed to prove by the preponderance of the credible evidence that Defendants or their predecessors in title relied upon any misrepresentation by Plaintiffs or their predecessors in title to their detriment. (No Estoppel Defense)

11. By the preponderance of the credible evidence, despite using reasonable diligence, Plaintiffs first learned of Defendants' or their predecessors in title's claims of ownership of an undivided one-half interest in the mineral estate on February 11, 2011. (No Limitations Defense)

12. Defendants failed to prove by the preponderance of the credible evidence that Plaintiffs or their predecessors in title unreasonably delayed in asserting legal or equitable rights upon which Defendants or their predecessors in title made a good faith change in their position because of such delay (No Laches Defense)

13. Plaintiff's cause of action against Defendants accrued on February 11, 2011. (No Limitations Defense)

14. Plaintiffs brought suit against Defendants on August 23, 2011 and were thereafter diligent in the issuance and service of citation to all Defendants. (No Limitations Defense)

15. Defendants failed to prove by the preponderance of the credible evidence that Defendants or their predecessors in title held title or color of title to the mineral estate in question after the date of the Release, January 18, 1908. (No Limitations Defense)

16. Defendants failed to prove by the preponderance of the credible evidence that Defendants or their predecessors in title held peaceable and adverse possession after the date of the Release, January 18, 1908. (No Limitations Defense)

17.	Defendants failed to prove by the preponderance of the credible evidence that Defendants or their predecessors in title cultivated, used or openly enjoyed the property.	(No Limitations Defense)

18.	Defendants failed to prove by the preponderance of the credible evidence that Defendants or their predecessors in title paid applicable taxes on the property.	(No Limitations Defense)

## Conclusions of Law

1.	Extrinsic evidence was admissible to show that the Release dated January 18, 1908 was intended to Release the Contract dated July 9, 1906.

2.	The Release dated January 18, 1908 released the Contract dated July 9, 1906.

3.	The Contract dated July 9, 1906, if not released by the January 18, 1908 Release, was released when the executory promises were not performed within a reasonable time.

4.	Plaintiffs' suit is not time barred.

5.	Defendants failed to prove any affirmative defense by the preponderance of the credible evidence.

6.	The interest of S.A. Mills and his wife Saphronia Mills, R. E. Mills and his wife Mary Ann Mills, and Thos. Mills and his wife Z. A. Mills, the parties of the first part in the 1906 Instrument, in and to the Disputed Interest is currently vested in and owned by Plaintiffs.

7.	Plaintiffs are the owners of the one-half mineral interest in the M. J. Mills 160-acre Survey described in the July 7, 1906 Contract.

8. Pursuant to stipulation and order, Plaintiffs, as the prevailing party, are entitled to receive funds paid in the registry of the court by Intervenors and future royalties.

**SIGNED** on _April 20_, 2015.

_____
Guy Griffin, Judge
145th Judicial District Court
Nacogdoches County, Texas
Sitting by Assignment

The State of Texas

County of Nacogdoches

Know all men by these presents: That we, S.A. Mills, Saphronia Mills, wife of S.A. Mills, R.E. Mills, Mary Ann Mills, wife of R.E. Mills, Thos Mills and wife Z.A. Mills parties of the first part are the owners of the several tracts of land hereinafter described, and there exists upon said land evidences in the way of surface indications which have moved said parties of the first part to believe that oil, Gas and mineral of other kinds exist in quantities of greater or lesser proportions underneath the surface, and whereas said parties <u>desire</u> to have the title to their lands examined, abstracted, and perfected if any defects exist, and desire to have certain indebtedness existing against the premises in the shape of notes for the purchase money for said land paid off and concentrated into the hands of the parties of the second part, and desire to have investigations, tests and demonstrations made in order to ascertain whether or not oil, gas and other minerals <u>abount</u> in, under and upon said land, and to have the property managed and controlled so as to bring results beneficial to them either by development and operation of said property for oil, gas or other mineral, or by selling said property if deemed best in their Judgment at such enhanced value as may result from the test, demonstration and investigations to be made by said parties of the second part, and whereas said parties of the second part have agreed to perform the work of testing, demonstrating investigating the oil upon said premises, and to generally handle the property for the best interest of all parties concerned by doing and performing such necessary things in the premises as will enhance the value of said property, - making it more salable, valuable and desirable by such usual proper and practical means as in the Judgment of the parties may seem best, and have agreed to abstract the title to said property to thoroughly examine and investigate said titles, and to do such things as are proper and necessary to perfect said titles, and have agreed to perform such other and further things as may seem necessary and proper to carry out the purpose and intent of this agreement.

Therefore in consideration of the premises, the services rendered and to be rendered by said parties of the second part, as hereinbefore specified and set forth, we, the said S.A. Mills, Saphronia Mills, R.E. Mills, Mary Ann Mills, Thos Mills and Z.A. Mills have bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto Robert Lindsey and June C. Harris, the parties of the second part, an undivided one half interest in the oil, gas, and other minerals which do or may exist, in, under and upon the several tracts of land hereinafter described, with the rights of ingress and egress, and such other and further rights and privileges as are necessary and proper for the performance of the work of prospecting, testing,



**PLAINTIFF'S EXHIBIT**

tabbies

**2 A.**

demonstrating, developing and operating for oil, gas, or other minerals, the land and premises are described as follows:

Situated in Nacogdoches County, Texas, about twelve miles Northeasterly from the town of Nacogdoches,

1st Tract, Being the property of S.A. Mills, and being 160 acres of M.J. Mills preemption, and all of said preemption.

2nd Tract, Being the property of R.E. Mills, and being 160 acres of the Jno. Cooper Survey.

3rd tract, Being the property of Thos Mills, and being 109 acres of the T.J. Cooper preemption, and the present homestead place of Thos. Mills and wife, also 160 – a part of the Jno. Cooper survey 9 acres reserved around house on 109 a tract.

To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Robt. Lindsey and June C. Harris, their heirs and assigns forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said remises unto the said Robt Lindsey and June C. Harris, their heirs and assigns against every person whomsoever lawfully claiming or to claim the ame or any part thereof.

Witness our hands at Nacogdoches, this the 9 day of July A.D. 1906.

| | |
|---|---|
| June C. Harris | S.A. Mills |
| Robt. Lindsey | R.E. Mills |
| | M.A. Mills |
| | Sophronia Mills |
| | T.B. Mills |
| | Z.A. Mills |

The State of Texas
County of Nacogdoches

Before me, the undersigned authority a Notary Public in and for Nacogdoches County, Texas, on this day personally appeared T. B. Mills, S. A. Mills, R. E. Mills known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, this the 13 day of July A.D. 1906.

{L.S.} D. C. Mast

Notary Public Nacogdoches County, Texas

The State of Texas
County of Nacogdoches

Before me M.C. Parrish a Notary Public in and for Nacogdoches Texas, on this day personally appeared June C. Harris and Robert Lindsey, known to me to be the person whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and considerations therein expressed.

Given under my hand and official seal of office at Nacogdoches, Texas, on this the 23rd day of July, 1906.

{L.S.}   M. C. Parrish
Notary Public Nacogdoches County, Texas

The State of Texas
County of Nacogdoches

Before me the undersigned authority a Notary Public in and for Nacogdoches County, Texas, on this day personally appeared Sophronia Mills, wife of S. A. Mills, Mary Ann Mills, wife of R. E. Mills, and Z. A. Mills wife of T. B. Mills known to me to be the persons whose names are subscribed to the forgoing instrument and having been examined by me privily and apart from their husbands and having the same sully explained to them, they, the said Sophronia Mills, Mary Ann Mills, and Z.A. Mills each acknowledged such instrument to be their act and deed and declared that they had willingly signed the same for the purposes and consideration therein expressed and that they did not wish to retract it.

Given under my hand and seal of office this the 13 day of July A.D. 1906.

{L.S.}   D. E. Mast
Notary Public Nacogdoches County, Texas

Filed for record July 23, 1906 at 12 o'clock m

P. M. Sanders County CLerk

GIVEN under my hand and seal of office this the 19th day of March A. D. 1927.

(L.S)

Ellis M. Sowell, Notary Public in and for Nacogdoches County, Texas.

Filed, March 23, 1927, at 10 O'clock A. M.

Recorded, March 23, 1927, at 11 O'clock A. M.

W. R. BAILEY, Clerk, County Court, Nacogdoches County, Texas.

By _____ - - - - - - Deputy

##############
G. S. HUSTON

TO

APPLICATION
##############

Rusk, Texas,

March 29th, 1927.

TO COUNTY SURVEYOR OF NACOGDOCHES COUNTY,

Nacogdoches, Texas.

I am citizen of the United States of America and desire to prospect for and develope the River bed and for petroleum, oil and natural gas on Angelina River, beginning on North boundary line of the Angelina County Line and the Southern Boundary line of Nacogdoches County, Texas, where the said lin_ runs and intersects the said Angelina River; Thence up said River to the South boundary of Rusk County, Texas, where the said River intersects the said boundary line of the said County of Nacogdoches, and being all of the River bed between the two points, which is navigable stream, and which said River bed averages about 30 vrs in width and estimated about 100,000 varas long and estimated at about 500 acres of River bed.

(Signed)    G. S. Huston

G. S. Houston
Rusk, Texas,
Cherokee County,
Address -

Filed, March 29, 1927, at 10:30 O'clock A. M.

Recorded, March 29, 1927, at 2 O'clock P. M.

W. R. BAILEY, Clerk, County Court, Nacogdoches County, Texas.

By _____ - - - Deputy

##############
RELEASE LEASE
JUNE C. HARRIS ET AL

TO

R. E. MILLS ET AL
##############

THE STATE OF TEXAS |

COUNTY OF NACOGDOCHES |

WHEREAS on the 9th day of July A. D. 1907, R. E. Mills, Tom Mills and Sam Mills executed and delivered to the Nacogdoches Land Company, a firm composed of Robt Lindsey and June C. Harris, a certain contract or lease covering land described in said contract or lease, a part of the John Cooper, T. J. Cooper and the M. J. Mills surveys in Nacogdoches County, Texas, providing for the development and exploitation of said property for oil and other mineral, and

WHEREAS by the terms of said contract or lease the time for said development has expired rendering null and void said lease.

THEREFORE this is to acknowledge a full and complete release and relinquishment of any right or claim held or claimed by said Nacogdoches Land Co., Robt. Lindsey or June C. Harris by virtue of said contract, lease or agreement, and the same is hereby declared to be extinguished and of no further force or effect.

WITNESS our hands at Nacogdoches, Texas, this the 18th day of January A D 1908.

PLAINTIFF'S
EXHIBIT
3

June C. Harris
Robt. Lindsey

THE STATE OF TEXAS

County of Nacogdoches        BEFORE ME, the undersigned authority a Notary Public
in and for Nacogdoches County, Texas, on this day personally appeared Robt. Lindsey
and June C. Harris, known to me to be the persons whose names are subscribed to the
foregoing instrument and acknowledged to me that they executed the same for the
purposes and consideration therein expressed.

GIVEN under my hand and seal of office this the 18th day of January A. D. 1908.

M. C. Parrish, Notary Public,
Nacogdoches County, Texas.

(L.S)

Filed, April 5, 1927, at 11 O'clock A. M.

Recorded, April 5, 1927, at 4 O'clock P. M.

W. R. BAILEY, Clerk, County Court,
Nacogdoches County, Texas.

By⸺⸺⸺⸺ Deputy

##########################
OIL AND GAS LEASE
H. W. BIRDWELL & WIFE

TO

C. P. LEWIS ET AL        AGREEMENT, made and entered into the 28 day of
##########################
Jan. 1927 by and between H. W. Birdwell & wife, Alice Birdwell of Chireno, Tex herein-
after called lessor (whether one or more), and C. P. Lewis , V. E. J. Lam Beau and
J. P. Stein hereinafter called lessee:

WITNESSETH: That the said lessor, for and in consideration of $1.00 and one well
2500 ft Dollars cash in hand paid, the receipt of which is hereby acknowledged, and of
the covenants and agreements hereinafter contained on the part of lessee to be paid,
kept and performed, has granted, demised, leased and let, and by these presents does
grant, lease and let unto the said lessee for the sole and only purpose of mining and
operating for oil and gas and of laying pipe lines and of building tanks, power stations
and structures thereon to produce, save and take care of said products, all that certain
tract of land situated in the County of Nacogdoches, State of Texas, described as fol-
lows, to wit:

500 acres more or less out of the J. A. Chireno grant -

(1) BEGINNING at the S W cor of 31 acres of J. M. Weeks land fr wh a P O 15 in
brs N 45 W 6½ vrs; Thence East with his S line 1271 vrs to a corner fr wh a Lin brs
N 54½ W 4.9 vrs another Linn brs S 25½ W 6.8 vrs , and an Elm brs N 71½ W 7.2 vrs;
Thence South 1069 vrs to a corner fr wh a S G brs S 16 E 24 vrs; Thence West with N
line of Geo. Berry 50 acres and W. L. Wilson 208 acres 1271 vrs to a cor fr wh a Pine
8 in brs N 39 E 8 vrs; Thence North 1069 vrs to the BEGINNING. Reference is made to
Volume 37 page 260, Deed Records of Nacogdoches County, for further and complete des-
cription.

(11) (Containing 240¾ acres of land more or less.)

BEGINNING at N E corner of R. O. Ferguson's tract on the W boundary line of J. L.
Fall tract; Thence S 10 E with said Fall's W. B. Line 44 vrs set stake on said line;
Thence S 70 W 127.6 vrs with line of Grave Yard set stake; Thence S 20 E 32.8 vrs to
Jane McAnally N W corner at 132.8 vrs pass Jane McAnally's S W corner; at 145.4 varas
set stake a Pine 12 in brs S 43 W 11.6 vrs dist and a Post Oak 6 in dia brs S 78 W 21
vrs dist; Thence S 15½ W 135 vrs to N bank of Fall's Spring Branch set stake a Pine 8
in dia brs N 49 W 8½ vrs a White Oak 18 in dia brs S 58 W __; Thence down said branch
to where it empties into Moore Branch; Thence up said Moore Branch to R. O. Ferguson's
S W corner on said branch; Thence with said Ferguson line to the place of BEGINNING,
Reference is made to Vol. 35 page 237 Deed Records of Nacogdoches County, for further
and complete description. (Containing 20 acres of land, more or less).

(111)
BEGINNING at a stake on the bank of a branch from which a China tree 8 in dia brs
N 46 W 3 vrs dist (old bearing trees were a White Oak 12 in dia brs West 32 feet dist,
a White Oak 14 in dia brs N 45 W 15 feet dist); Thence N 80 W with A. H. Cronkrite's
(formerly H. D. Palmer) E & W line 467 vrs to a stake it being A. H. Cronkrite's (
formerly D. H. Palmer, N W corner an Ash 22 in dia brs N 27 E 2.4 vrs a White Oak 12
in dia (now dead) brs S 26 E 2.2 vrs, new bearings a Linn brs S 25 W 6.8 vrs, a Linn
brs N 54½ W 54½ W 4.9 vrs; Elm bears N 71½ W 7.2 vrs; Thence N 10 E with J. M. Weeks
line (formerly Ann P. Anderson line) 710.4 vrs to J. M. Weeks N E corner of his 157¾
acre tract from which a Red Oak 10 in dia brs N 41 W 6.4 vrs and a Red Oak 8 in brs
S 10 W 8 vrs; Thence S 80 E 406 vrs to a stake on branch from which a Sugar Maple 12 in

# APPENDIX 5 DEED OF TRUST
## VOL 108

Position 5

**3852**  10⁰⁰  . **341**

Form FHA 427-1 Tex.
(Rev. 1-3-66)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

REAL ESTATE DEED OF TRUST FOR TEXAS
(INSURED LOANS TO INDIVIDUALS)

THIS INDENTURE, made and entered into this _____15th_____ day of _____November_____, 19 _67_

between _____Donald W. Mills and wife, Laura B. Mills_____,

residing in _____Nacogdoches_____ County, Texas, whose post office

address is _____Route 7, Box 141, Nacogdoches,_____, Texas _____75961_____,

herein called "Borrower," and _____L. J. Cappleman_____, State Director
of the Farmers Home Administration for the State of Texas, and his successors in office as State Director or Acting State Director, as trustee, herein called "Trustee," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, as beneficiary, herein called the "Government," WITNESSETH THAT:

WHEREAS, Borrower is justly indebted to the Government as evidenced by a certain promissory note, herein called "the note," dated

_____November 15_____, 19 _67_, for the principal sum of _____SIX THOUSAND AND NO/100--------_____

_____ Dollars ($ _6,000.00_ ), with interest at the rate

of _____five_____ percent ( ___5_ %) per annum, executed by Borrower and payable to the order of the Government in

installments as specified therein, the final installment being due on _____November 15, 2007_____, which note
authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower; and

WHEREAS, the note evidences a loan to Borrower in the principal amount specified therein, made with the purpose and intention that the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farmers Home Administration Act of 1961, or Title V of the Housing Act of 1949; and

WHEREAS, when payment of the note is insured by the Government, it may be assigned from time to time and each holder of the insured note, in turn, will be the insured lender; and

WHEREAS, when payment of the note is insured by the Government, the Government will execute and deliver to the insured lender along with the note an insurance endorsement insuring the payment of the note fully as to principal and interest; and

WHEREAS, when payment of the note is insured by the Government, the Government by agreement with the insured lender set forth in the insurance endorsement may be entitled to a specified portion of the interest payments on the note, to be designated the "annual charge"; and

WHEREAS, a condition of the insurance of payment of the note will be that the holder will forego his rights and remedies against Borrower and any others in connection with said loan, as well as any benefit of this instrument, and will accept the benefits of such insurance in lieu thereof, and upon the Government's request will assign the note to the Government; and

WHEREAS, it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured lender, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance endorsement by reason of any default by Borrower:

NOW, THEREFORE, in consideration of said loan Borrower does hereby grant, sell, convey, and assign unto Trustee the following

property situated in the State of Texas, County(ies) of _____Nacogdoches_____:

FIRST TRACT: Being 160 acres of land, more or less, and being all of the M. J. Mills Survey, Nacogdoches County, Texas, and being the same land described in the deed from Jerald Lee Spruill and wife, Evelyn Spruill, to D. W. Mills and wife, Laura Belle Mills, dated June 14, 1962, recorded in Vol. 306, Page 487, Deed Records, Nacogdoches County, Texas, and being described by metes and bounds as follows, to-wit:

BEGINNING at a post on the S. B. L. of a Survey of 320 acres for J. W. Woods 66 vrs. from his S.W.C. at a stake a Walnut brs. S. 40 W. 1 vr. S. 67 E. 2 vrs;
THENCE E. with Woods line 979.3 vrs. to stake, an Ash brs. S. 47-1/2 W. 4.8 vrs  S. 88-1/2 E. 1-1/2 vrs.;
THENCE S. 922.6 vrs. to a stake, a Pine brs. S. 4-1/2 W. 2-1/2 vrs. a sandjack N. 81 W. 5.8 vrs.;
THENCE W. 979.3 vrs. to a stake, a Blackjack brs. N. 39 E. 1.2 vrs. a Post Oak N. 70 W. 5 vrs.;
THENCE N. passing the S.E.C. of J. Cooper's Survey 922.6 vrs. to the place of BEGINNING, containing 160 acres, more or less.

SECOND TRACT: Being 72 acres of land, more or less, a part of the John W. Wood Survey, Abst. No. Abst. No. 607, Nacogdoches County, Texas, and being the same land described in the deed from Fronie Mills et al to D. W. Mills, dated July 17, 1943, recorded in Vol. 162, Page 520, Deed Records, Nacogdoches, and being described by metes and bounds as follows, to-wit:

DEFENDANT'S EXHIBIT 3

FEB 18 2015

BEGINNING at S.W.C. same a P.O. 10 W. 4.2 vrs. a P.O. 12 in. N. 7.6 vrs.; 342
THENCE E. 740 vrs. to cor. on S.B.L. of said Woods Survey;
THENCE N. 556 vrs. to cor. a Pine 6 in. S. 22 E. 6.4 vrs., a Pine 12 in.
N. 42-1/2 E. 10-1/2 vrs.;
THENCE W. 740 vrs. cor. on W. B. L. of said Woods Survey, a Pine 4 in.
S. 68 E. 4 vrs. a Pine 6 in. S. 30 W. 9 vrs.;
THENCE S. with W. B. L. of said Woods Survey 556 vrs. to the place of
BEGINNING, and containing 72 acres of land, more or less.

THIRD TRACT: Being 90 acres of land, more or less, a part of the John W.
Wood Survey, Abst. No. 607, Nacogdoches County, Texas, and being the same
land described in the deed from A. J. Thompson to D. W. Mills, dated
August 30, 1955, recorded in Vol. 253, Page 62, Deed Records, Nacogdoches
County, Texas, and being described by metes and bounds as follows, to-wit:

BEGINNING at the N. W. corner of said J. W. Wood Survey, a Hickory and Pine
for witness trees, the Hickory brs. N. 46 W. 6.2 vrs.;
THENCE East with the N. B. L. of said Survey 935 varas to a cor. on said
line, a Black Jack for witness;
THENCE South 200 vrs. for cor., a Black Jack for witness;
THENCE West 195 vrs. to a cor., a Black Jack and a Pine for witness trees;
THENCE South 434 vrs. to a cor. from which a Pine brs. S. 22 E. 6.4 vrs.
and a Pine brs. N. 42-1/2 E. 10-1/2 vrs.;
THENCE West 470 vrs. to a cor. on the W. B. L. of the J. W. Woods Survey;
THENCE North with the W. B. L. of said Survey 634 vrs. to the place of
BEGINNING, being same tract as described in Vol. 125, Page 628 of the Deed
Records, Nacogdoches County, Texas, and containing 90 acres of land, more or
less.

LESS, HOWEVER, 1/2 acre of land in the Northwest corner of the John W.
Wood Survey, Abst. No. 607, Nacogdoches County, Texas, out of a 90 acre tract,
and being the same land described in the deed from D. W. Mills and wife,
Lara Belle Mills to Lloyd H. Mills and wife, Naomi Mills, dated July 23, 1962,
recorded in Vol. 306, Page 563, Deed Records, Nacogdoches County, Texas, and
being described by metes and bounds as follows, to-wit:

BEGINNING at the N. W. C. of the J. W. Woods Survey;
THENCE S. along the W. line of the J. W. Woods Survey to a point in the N.W.
right-of-way line of a County road (known as the Libby-Mt. Morriah to Shady
Grove Road);
THENCE Northwesterly direction along the N. W. line of said County Road
to a part for corner in the North line of the said J. W. Woods Survey;
THENCE W. along the North line of said J. W. Woods Survey to the point of
BEGINNING.

FEB 18 2015

Dona Bass

<u>SUBJECT, HOWEVER, TO THE FOLLOWING</u>:

343

1. Deed of Trust dated March 16, 1967, from D. W. Mills et ux to Hal Weatherford, Trustee, securing a note in the original principal amount of $32,800.00, payable to the Federal Land Bank of Houston, recorded in Volume 105, Page 304, Deed of Trust Records, Nacogdoches County, Texas. (FIRST, SECOND AND THIRD TRACTS)

2. Conveyance of an undivided 1/2 royalty interest as described in Royalty Deed dated September 7, 1934, from S. A. Mills et al to Fred F. Tucker, recorded in Volume 138, Page 87, Deed Records, Nacogdoches County, Texas. (FIRST, SECOND AND THIRD TRACTS)

3. Conveyance of an undivided 1/2 mineral interest as described in Mineral Deed dated July 9, 1906, from S. A. Mills et al to Robert Lindsey et al, recorded in Volume 64, Page 64, Deed Records, Nacogdoches County, Texas. (FIRST TRACT)

4. Right of Way Deed dated March 5, 1945, from Mrs. Fronie Mills to Magnolia Petroleum Company, recorded in Volume 167, Page 242, Deed Records, Nacogdoches County, Texas. (FIRST TRACT)

5. Conveyance of an undivided 1/2 mineral interest as described in Mineral Deed dated March 21, 1962, from D. W. Mills et ux to Jake L. Hamon, recorded in Volume 302, Page 211, Deed Records, Nacogdoches County, Texas. (FIRST TRACT).

6. Conveyance of an undivided 1/2 mineral interest as described in Mineral Deed dated March 21, 1962, from D. W. Mills et ux to Jack L. Hamon, recorded in Volume 302, Page 209, Deed Records, Nacogdoches County, Texas. (SECOND TRACT)

7. Reservation or conveyance of an undivided 1/2 mineral and/or royalty interest as described in Deed dated August 30, 1955, from A. J. Thompson to D. W. Mills, recorded in Volume 253, Page 62, Deed Records, Nacogdoches County, Texas. (THIRD TRACT)

8. Oil, Gas and Mineral Lease dated March 20, 1960, from D. W. Mills et ux to Standard Oil Company of Texas, recorded in Volume 96, Page 51, Oil and Gas Lease Records, Nacogdoches County, Texas. (FIRST, SECOND AND THIRD TRACTS)

FEB 18 2015

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein—all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto Trustee, his successors, grantees and assigns forever;

IN TRUST, NEVERTHELESS, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, (b) at all times when the note is held by an insured lender, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance endorsement by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement.

AND BORROWER for himself, his heirs, executors, administrators, successors and assigns WARRANTS the property unto Trustee for the benefit of the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured lender, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government any initial fees for inspection and appraisal, and any delinquency charges, now or hereafter required by regulations of the Farmers Home Administration.

(3) At all times when the note is held by an insured lender, any amount due and unpaid under the terms of the note, less the amount of any annual charge, may be paid by the Government to the holder of the note as provided in the note and insurance endorsement for the account of Borrower. Any amount due and unpaid under the terms of the note, whether it is held by the Government or by an insured lender, may be credited by the Government on the note and thereupon shall constitute an advance by the Government for the account of Borrower. Any advance by the Government as described in this paragraph shall bear interest at the note rate from the date on which the amount of the advance was due to the date of payment to the Government.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by him when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the note rate until paid to the Government.

(5) All advances by the Government as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of his covenant to pay. Such advances, with interest, shall be repaid from the first available collections received from Borrower. Otherwise, any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments against the property and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by, delivered to, and retained by the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husband-manlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) If this instrument is given for a "Farm Ownership" loan as identified in Farmers Home Administration regulations, personally to operate the property with his own and his family labor as a farm and for no other purpose, and not to lease the property or any part of it, unless the Government consents in writing to some other method of operation or to a lease.

(11) To comply with all laws, ordinances, and regulations affecting the property.

(12) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note or any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(13) Neither the property nor any portion thereof or interest therein shall be assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as beneficiary hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured lender shall have any right, title or interest in or to the lien or any benefits hereof.

(14) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(15) The Government may extend and defer the maturity of and renew and reamortize the debt evidenced by the note or any indebtedness to the Government secured hereby, release from liability to the Government any party so liable thereon, release portions of the property from and subordinate the lien hereof, and waive any other rights hereunder, without affecting the lien or priority hereof or the liability to the Government of Borrower or any other party for payment of the note or indebtedness secured hereby.

(16) The power to appoint a substitute trustee is hereby granted to the Government and its assigns, to be exercised at any time hereafter, without notice and without specifying any reason therefor, by filing for record in the office where this instrument is recorded an instrument of appointment, whereupon the substitute trustee shall succeed to all the estates, rights, powers, and trusts herein granted to or vested in Trustee, and the former trustee or substitute trustee shall be divested thereof; and notice of the exercise of this power and any requirement of, or right to require, a bond from any trustee hereunder, are hereby waived.

FEB 18 2015

(17) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(18) Default hereunder shall constitute default under any other real estate or crop or chattel security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(19) SHOULD DEFAULT occur in the performance or discharge of any obligation secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government at its option, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, and (d) authorize and request Trustee to foreclose this instrument and sell the property as prescribed by law.

(20) Upon default aforesaid: (a) at the request of the Government, Trustee may foreclose this instrument either by court action pursuant to law or by advertisement and sale of the property as provided by law, for cash or secured credit at the option of the Government, personal notices of which sale need not be served on Borrower; (b) such sale may be adjourned from time to time without other notice than oral proclamation at the time and place appointed for such sale and correction made on the posted notices, and at such sale the Government and its agents may bid and purchase as a stranger; (c) Trustee at his option may conduct such sale, without being personally present, through his delegate authorized by him for such purpose orally or in writing and without notice to Borrower of such authorization; and (d) if the property is situated in two or more counties, the sale may be held in any one of such counties selected by the Government in its sole discretion: Provided, however, that in any deed or deeds executed by Trustee hereunder, any and all statements of fact and other recitals therein made as to the nonpayment of the money secured, the nonperformance of covenants herein, the request to Trustee to enforce this Trust, the proper and due appointment of any substitute Trustee, the advertisement or due publication of sale, the due authorization by Trustee of his delegate to conduct the sale, or as to any other preliminary act or thing having been duly done by said Trustee shall be taken by any and all courts of law and equity as prima facie evidence that said statements or recitals do state facts, and without further questioning shall be accepted as such by Borrower.

(21) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. In case the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(22) All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

(23) As against the debt evidenced by the note and any indebtedness to the Government hereby secured, with respect to the property, and to the extent permitted by law, Borrower hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, homestead, valuation, appraisal, redemption, and exemption to which Borrower is or becomes entitled under the laws and constitution of the jurisdiction where the property lies. In the event of foreclosure of the indebtedness evidenced by the note and any indebtedness to the Government secured hereby, or of any other indebtedness secured by all or a part of said property, whether owned or held by the Government or by a third party, Borrower hereby relinquishes, waives and conveys all rights, inchoate or consummate, to require all or any part of said indebtednesses to be satisfied first from the sale of property which does not constitute any part of the Borrower's homestead.

(24) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(25) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration, United States Department of Agriculture, at Temple, Texas 76501, and in the case of Borrower to him at his post office address stated above.

(26) If this deed or trust should be invalid for any purpose for which it is executed, such invalidity for such purpose shall not impair its validity for any other purpose or in the event that any portion of the indebtedness under the note when it is held by the Government or any assignee of this deed of trust, or any portion of the indebtedness to the Government under this deed of trust, is not validly secured hereunder, then in that event, the first payments made upon any such indebtedness shall be applied in payment of that portion of the indebtedness which is not validly secured, and no payment shall be applied toward that portion of the indebtedness secured by a valid lien hereunder until any indebtedness not so secured shall have been paid in full.

(27) This deed of trust has been executed in extension and renewal, but not in extinguishment, of a certain mechanic's and materialman's

lien on the property and all improvements thereon, dated _____ , recorded in the mechanic's and

materialmen's lien Record of _____ County, Texas, which secures a mechanic's lien note executed by Borrower

in the principal sum of _____ dollars ($ _____ ), dated

_____ , bearing interest at the rate of _____ percent ( _____ %) per annum as set forth

therein, payable to the order of _____ on demand, which note has been renewed and extended, but not satisfied, by the note described in this deed of trust. The aforesaid mechanic's lien note and mechanic's and materialman's

lien, and all of the rights, liens, equities and remedies of _____ in the note and lien have been duly assigned, transferred and conveyed to the Government by written assignment and transfer of even date with this deed of trust and recorded in the office of the County Clerk of the aforesaid County, Borrower does hereby covenant and represent that there are no defenses to said debt or lien, and agrees that the Government shall be subrogated to all of the rights, liens, equities, and remedies of the original owner and holder of the note and lien which are being renewed and extended in this deed of trust and the note described herein.

IT IS AGREED by and between Borrower and the Government that the Government will, for the sum of $ 6,000.00 _____ , erect, construct, complete and repair buildings or other improvements upon, and will furnish all labor and material necessary for the purpose of making such repairs and improvements upon said property as are described in the Development Plan agreed to in writing by Borrower and the Government and made a part hereof and incorporated herein by reference, except labor to be performed by Borrower; to secure which sum Borrower hereby gives and creates a valid constitutional and contractual lien on said property; and that if said sum is not actually expended for such repairs and improvements, any amount not so expended shall be credited on the indebtedness evidenced by the note. It is further agreed that a failure to complete said repairs and improvements, or failure to complete same, according to said Development Plan, shall not defeat said indebtedness and lien, but in such event said indebtedness and lien upon said property shall exist in favor of the Government or its assigns for the amount herein agreed upon, less such amount as would be reasonably necessary to complete said repairs and improvements according to said Development Plan.

BORROWER, for the express purpose of inducing the Government to make or insure the loan evidenced by the note described herein, represents that Borrower does not reside upon, use, or claim, as either a business or residence homestead, the property described above, but that Borrower now resides upon, uses and claims as a homestead the following described tract, lot or parcel of land, the fee simple title to which is vested in Borrower:

FEB 1 8 2015

BY _Dina Bass_

WITNESS the signature(s) of Borrower on the day and year first above written.

**346**

Donald W. Mills
Donald W. Mills    (Husband)

Laura B. Mills
Laura B. Mills    (Wife)

## JOINT ACKNOWLEDGMENT BY HUSBAND AND WIFE

STATE OF TEXAS

COUNTY OF ..... Nacogdoches .....

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared.....

..... Donald W. Mills .....

and ..... Laura B. Mills ....., his wife,
both known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they

each executed the same for the purposes and consideration therein expressed, and the said.....

..... Laura B. Mills ....., wife of the said

..... Donald W. Mills ....., having been examined

by me privately and apart from her husband, and having the same fully explained to her, she, the said.....

..... Laura B. Mills ....., acknowledged such instrument to be her act and deed,
and she declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not
wish to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the..... 15th .....day of ..... November ....., 19..67.

     Carole Bradshaw
     Notary Public in and for

[SEAL]

..... Nacogdoches ..... County, Texas

## SINGLE ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF .....

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared.....

....., known to
me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that ..... he executed the same
for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the.....day of ....., 19.....

[SEAL]

     Notary Public in and for

..... County, Texas

Filed     Nov. 15    1967   at   2:00   o'clock   P. M.

Recorded   Nov. 22   · 1967   at    4:00    o'clock     P. M.

Hope Skipper, Clerk County Court
Nacogdoches County, Texas

By _Mildred McKinnie_    Deputy

FEB 18 2015

Dona Bass

C.A. NO. 12-15-00170-CV

IN THE
COURT OF APPEALS FOR THE STATE OF TEXAS
TWELFTH SUPREME JUDICIAL DISTRICT
TYLER, TEXAS

LINDA ANN PARRISH RICHARDSON and GARY BRUCE
RICHARDSON, CO-TRUSTEES OF THE M. C. PARRISH, JR.
TESTAMENTARY TRUST *et al*,
APPELLANTS

VS.

DONALD ROGER MILLS *et al*,

APPELLEES

ON APPEAL FROM THE 145TH JUDICIAL DISTRICT COURT
OF NACOGDOCHES COUNTY, TEXAS

APPENDIX - OPTIONAL CONTENTS

TO

BRIEF FOR APPELLANTS

# TABLE OF CONTENTS

**APPENDIX 6**     Copy of *Crumpton v. Scott*, 250 S.W.2d 953 (Tex.Civ.App.–Fort Worth 1952, n.r.e.)

# APPENDIX 6

## Texas Case Law

CRUMPTON v. SCOTT, 250 S.W.2d 953 (Tex.Civ.App.-Ft. Worth 1952)

250 S.W.2d 953

CRUMPTON et al. v. SCOTT et al.

No. 15306.

Court of Civil Appeals of Texas, Fort Worth.

June 20, 1952.

Rehearing Denied September 12, 1952.

Appeal from the District Court of Montague County, Louis T. Holland, J.

Preston Dowd, Texarkana, Ark., Travers Crumpton, Fort Stockton, and Scott Snodgrass, San Angelo, for appellants.
**Page 954**

L. V. Abernathy, Wichita Falls, and Cole, Patterson, Cole & McDaniel, Houston, for appellees.

RENFRO, Justice.

Suit was filed in the district court of Montague County in trespass to try title and to remove cloud. The plaintiff and the interveners are heirs of Calvin J. Scott, deceased. The defendants are heirs of Sid Crumpton, deceased. All parties have appealed from the trial court's judgment and are appellants herein. The plaintiff and interveners will be referred to as plaintiff-interveners and the heirs of Sid Crumpton will be referred to as defendants.

The controversy arose over the effect and construction of a written instrument which reads in part as follows:

"Know All Men By These Presents, that we, Calvin J. Scott joined by his wife, C. E. Scott, of the County of Miller and State of Arkansas, for and in consideration of the sum of One dollar ($1.00) to us in hand paid, the receipt being herein acknowledged, and the further consideration of his services to be performed as our attorney in reference to our rights and interest in and to five hundred and seventy-six (576) acres of land situated in Montague County, Texas, which we have heretofore leased to I. L. Gilmore and associates, for a term of five years, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Sid Crumpton, of the County of Bowie, State of Texas, a one-third undivided interest in and to our royalty rights in all minerals, including gas, oil, etc., in and to all that certain tract or parcel of land situated in Montague County, Texas, being a part of the William Watson H. R. Sur., * * *"

The follows references to a deed executed in 1881 and an oil

and gas lease executed in January, 1923, 'to which records reference is made for better description to said land,' and 'this conveyance is intended to convey to the said Sid Crumpton a one-third undivided interest in and to the mineral rights, including gas, oil and other minerals therein contained.'   Then follows the general warranty clause.   The instrument is dated April 28, 1923.

The instrument was executed by Calvin J. Scott and wife, C. E. Scott, and delivered to Sid Crumpton and by Crumpton filed for record in Montague County.

Plaintiff-interveners contend the instrument was merely an executory contract and Crumpton never performed under the same. Defendants contend the instrument was an executed deed, effective to convey said interest upon its execution and delivery.   Among other defenses, defendants plead limitations.

Trial was had before a jury, which resulted in findings that the above instrument was intended to constitute a contract for legal services to be performed by Crumpton and that Crumpton substantially failed to perform said contract.

The court overruled plaintiff-interveners' motion for judgment on the verdict and granted, in part, defendants' motion for judgment non obstante.   The judgment entered found the instrument to be a deed passing title as of the date of its execution and delivery and construed same to convey to Crumpton an undivided one-third of the mineral interest owned by Calvin J. Scott and wife on April 8, 1923.

Plaintiff-interveners contend the court erred in holding the same to be an executed deed.

At the time of the execution of the above instrument, Calvin J. Scott, by and through the will of his uncle, Peter R. Johnson, owned a full undivided one-half interest in the minerals in the land described, and, as collateral heir of Frances Watson Johnson, owned a small fractional interest in the remaining one-half interest.   To avoid confusion, the 'other one-half interest' will be referred to as the Frances Watson undivided one-half interest.

On the trial of the case, it was shown that as of the date of the instrument in question, affidavits were of record in Montague County indicating that Calvin J. Scott thought he had been adopted by Peter R. Johnson and Frances Watson Johnson.
**Page 955**
If that were true, Mrs. Johnson having died intestate, leaving no other children, Calvin J. Scott would have inherited all of the Frances Watson undivided one-half interest.

Evidence was introduced that Crumpton never filed any suit or other instruments subsequent to April 28, 1923.

The deposition of Calvin J. Scott was introduced in which he testified that he employed Crumpton to act as attorney in clearing title as against the heirs of William Watson, and in answer to the question whether or not Sid Crumpton ever did any work in clearing title to such land, the witness answered, 'If he did I didn't know it.'   The witness denied that he ever executed a deed to Crumpton.

Sid Crumpton died in February, 1937.   Calvin J. Scott died some time after 1947.   During the time both were living,

neither filed any suit against the other nor any one else concerning the mineral interest herein involved.  Defendants contend that the deed being absolute on its face and not void, art. 5529, the four year statute of limitation applies. Plaintiff-interveners, relying upon Browne v. King, **111 Tex. 330, 235 S.W. 522**; Hazlett v. Harwood, **80 Tex. 508, 16 S.W. 310**; Tayler v. Taul, **88 Tex. 665, 32 S.W. 866**; Dull v. Blum, 68 Tex. 299, 4. S.W. 489, and other cases, contend that under the authority of said cases the court erred in construing the instrument as a warranty deed and contend that same is an executory contract and the evidence having shown performance was not made by said Crumpton, the instrument never became effective and merely constitutes a cloud upon their title.

We note that in most of the above cases, if not all, the courts were construing the effect of a power of attorney in which the attorney was required to sue for a recovery of the disputed lands or interest and the interest conveyed in said instruments was to come out of the interest to be recovered.

In the instrument in question, Crumpton, the grantee, did not agree to sue or prosecute any suits or take any action other than to perform services in reference to Calvin J. Scott's 'rights and interest in and to' the 576 acres of land therein described.

It is undisputed that at the time of the execution of the instrument no one was claiming any interest to Calvin J. Scott's undivided one-half interest nor to his fractional interest in the Frances Watson undivided one-half interest. Calvin J. Scott's sole claim to more than the admitted fractional interest in the Frances Watson undivided one-half interest was based on his understanding that he was Frances Watson Johnson's adopted son. Under the circumstances, we think all Crumpton was called upon to do, under the terms of the instrument, was to investigate such contingency and advise Scott of his findings.  Calvin, J. Scott was or was not adopted by his aunt and the attorney could ascertain the true fact by investigation and without the necessity of bringing any suit. As a matter of fact, it is undisputed that Calvin J. Scott was not adopted by his aunt; therefore, he had no interest in the Frances Watson undivided one-half mineral interest over and above his fractional interest as a collateral heir. There is no evidence that Crumpton did not make such investigation and give advice to Calvin J. Scott.  As seen from an examination of the instrument, Crumpton was not obligated to and did not agree to clear title to the Frances Watson interest.

The instrument was valid on its face, meeting every statutory requirement.  It was executed and delivered by the vendors and accepted and filed for record by the vendee and the original remained in the possession of the vendee throughout his lifetime.  We think the trial court was correct in disregarding the jury's answer and rendering judgment non obstante that the deed was effective to pass title as of the date of its execution.

Assuming that Crumpton did not perform services under the contract, we think that part of the consideration, 'in reference to our rights and interest,' placed the grantors in no different situation than if a note had been executed for part of the purchase price without retaining a vendor's lien, or if part of the consideration had been that the grantee would care for the grantor in the future.  Ransom v. Brown, 63 Tex. 188;

14 Tex.Jur., p. 802,
**Page 956**
secs. 45, 48, 50 and 51; Sisk v. Randon, **123 Tex. 326**, **70 S.W.2d 689**.
   The grantor did not see fit to provide that
failure on the part of Crumpton to perform should operate to
cause the property to revert to the grantor.  Where there is no
express lien, the conveyance is an executed contract by which
the title passes absolutely to the purchaser.  Burgess v.
Hatton, Tex.Civ.App., **209 S.W.2d 999**, writ refused.  Calvin J.
Scott had the right to set aside the deed if he had legal or
equitable grounds therefor, or to sue for damages for
Crumpton's failure to perform if he did fail to perform.  The
instrument was not void on its face.  The instrument being a
warranty deed and not void, the plaintiff-interveners' suit is
barred by limitation.  Slaughter v. Qualls, **139 Tex. 340**, **162 S.W.2d 671**;
 La Fleaur v. Kinard, Tex.Civ.App., **161 S.W.2d 144**,
writ refused, w. m.

   The law favors a rule of construction requiring an
interpretation under which a deed will be valid and operative
in preference to one which will nullify it.  14 Tex.Jur., p.
915. The trial court correctly construed the disputed
instrument to be a deed passing present title.

   The plaintiff-interveners contend the court erred in
rendering judgment non obstante because the jury findings that
Crumpton rendered no service, coupled with the attorney-client
relationship, and the unjust enrichment of Crumpton, give rise
to a constructive trust by operation of law.

   A constructive trust is ordinarily imposed to prevent unjust
enrichment obtained through fraud or under circumstances
amounting to constructive fraud.

   It is apparent from the record that Calvin J. Scott's claim
was based on his contention that he was an adopted son of
Frances Watson Johnson.  He recognized that by asking Crumpton
to merely 'perform services.'  The very nature of the
employment called for investigation and advice.  There is no
evidence that he did not do just that.  The only service he
could have performed was to investigate the claim of Calvin J.
Scott in regard to the adoption.  When he found there had been
no adoption, there was nothing further for him to do.  The
plaintiff-interveners rely on the jury finding of no
performance as basis for their claim of unjust enrichment.

   The finding that Crumpton did nothing to clear the Frances
Watson title does not negative the fact that he performed what
he was employed to perform.  We find no evidence in the record
as to the value of the mineral interest conveyed at the time.
Calvin J. Scott must have been satisfied with his contract.
Sid Crumpton lived until February, 1937, and Calvin J. Scott
never took any action to cancel the deed or seek any relief
thereunder.  Calvin J. Scott lived more than twenty-four years
after executing the deed and he never filed any suit or
questioned the claim of Sid Crumpton, or his heirs, in any
manner.  We uphold the trial court's presumed finding that the
evidence would not justify a finding that Sid Crumpton was
unjustly enriched or that the circumstances were such as to
result in a constructive trust.  The point of error is
overruled.

   The defendants have appealed from that portion of the trial
court's judgment construing the deed to pass one-third

undivided interest in the minerals owned by Calvin J. Scott and wife at the date of the execution of same.  When an instrument does not, by its terms, clearly and plainly describe the land affected, or is phrased in language susceptible of more than one construction, the intention of the parties is to be ascertained not solely from the words of the instrument but from its language when read in the light of the circumstances surrounding the transaction.  Gulf Production Co. v. Spear, **125 Tex. 530, 84 S.W.2d 452**.  It is admitted that Calvin J. Scott owned no interest in the William Watson H. R. Survey above the one-half undivided interest inherited from Peter R. Johnson and the fractional interest inherited from Frances Watson Johnson. As seen from the deed, part of the consideration for its execution was for services in reference to 'our rights and interest' (emphasis ours) in the 576 acre tract.  The language then used in the granting clause is one-third undivided insterest in and to 'our

**Page 957**

(emphasis ours) royalty rights in all minerals, including gas, oil,' etc. Taking into consideration the circumstances surrounding the transactions and construing the deed from its four corners, we think the reference to the Belcher deed and the Gilmore lease was intended to describe the tract containing the interest conveyed and did not intend, by such references, to describe the actual interest conveyed.  The trial court properly construed the deed to convey a one-third undivided interest in and to the minerals then owned by the grantors.

We have given careful attention to all points and counterpoints raised by all parties and we think no reversible error has been shown and therefore affirm the judgment of the trial court.

**Page 148**

Copyright © 2014 CCH Incorporated or its affiliates